**Opinion filed November 5, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-08-00119-CR

———————

## CHARLES DON THREET, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR17050**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Charles Don Threet of theft of livestock and assessed his punishment at confinement for ten years and a $10,000 fine. However, imposition of the sentence was suspended, and Threet was placed on community supervision for ten years. Threet raises one

issue on appeal, contending that the evidence supporting his conviction is factually insufficient.[1] We affirm.

*Standard of Review*

To determine if the evidence is factually sufficient, we must review all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

*Factual Sufficiency Analysis*

To commit the offense of theft, a person must unlawfully appropriate property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009). Appropriation of property is unlawful when it is done without the effective consent of the owner. *Id*. at (b). Consent is not effective if induced by deception. *Id*. at (a).

On appeal, Threet claims he had the effective consent of Jordan Cattle Auction and, therefore, cannot be guilty of theft of cattle. The evidence supports the trial court's decision that Threet lacked consent because he used deception to take the livestock from Jordan Cattle Auction.

Jordan Cattle Auction's office manager, Brenda May, testified that Threet represented at three separate auctions run by Jordan Cattle Auction that he was purchasing cattle for Joe Don Pogue. Pogue had order-buyer status. Order buyers could defer payment up to a week after the auction, but all other buyers were required to pay on the day of the auction. May testified that, if she had known Threet was purchasing cattle for himself rather than Pogue, he would have been expected to pay the day of the auction and his check verified before the cattle exchanged hands.

Pogue had frequently used Threet as a purchasing agent at Jordan Cattle Auction in the past. Everyone at Jordan Cattle Auction relied on this past relationship and assumed that Threet was truthful about purchasing cattle for Pogue. Pogue had previously notified Jordan Cattle Auction that Threet was not to purchase any more cattle for him, but Jordan Cattle Auction assumed this was only a temporary situation. May testified that the transaction became unusual when Threet's payment

---

[1]We note that the State analyzed legal sufficiency in its brief, but Threet did not address it in his brief. Therefore, neither will we.

2

arrived a week after the auction. When Threet purchased cattle for Pogue, they had always received a check drawn on Pogue's corporate account. This time, however, the check was drawn on the account of Jesse Threet, Charles Threet's son. That check failed to clear because of insufficient funds.

Ken Jordan, the owner of Jordan Cattle Auction, testified about their attempts to collect payment from Threet. Jordan contacted Pogue and was informed that Pogue was not involved with the transaction. Jordan contacted Threet. Threet was evasive but promised to pay for the cattle. At no time did Threet indicate that Pogue was involved with the transaction. Threet never paid for the cattle, never returned the cattle, or made any other attempt to satisfy his obligation.

Texas Ranger Joey Gordon testified that he conducted an investigation and discovered that five cattle auctions, each in separate counties, had similar complaints against Threet. Threet had made five cattle purchases within a two-week span and had paid with hot checks at each auction. Prior to trial, Threet pleaded guilty to theft of livestock in two of these counties.

Threet testified in his own defense that Jordan Cattle Auction extended him credit for the auction purchase. He testified that he and his son never paid for the cattle the same day they picked them up but would always pay a week later. He claims this arrangement started while working as an agent for Pogue but that Jordan Cattle Auction "just kind of translated that on down and never changed." Threet also testified that his son picked up and paid for cattle at Threet's direction. Threet admitted that he pleaded guilty in the two other counties.

After reviewing the evidence in a neutral light, the trial court's determination that Threet unlawfully appropriated property with the intent to deprive Jordan Cattle Auction of the property is not against the great weight of the evidence, and the evidence is not so weak to make the determination clearly wrong or unjust. Here, the trial court was the trier of the facts and was free to determine the weight and credibility of the testimony. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). The trial court could reasonably disbelieve Threet's claim that Jordan Cattle Auction effectively consented to him taking the cattle by extending him credit. There was ample evidence that Threet induced the sale by deception by lying about purchasing cattle on Pogue's behalf. Accordingly, we overrule Threet's sole issue.

*Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


November 5, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4