# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00015-CR

**Jason Rhodes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NO. 06-797-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We deny Rhodes's motion for rehearing, withdraw our opinion and judgment dated August 31, 2011, and substitute the following in their place. We dismiss Rhodes's motion for en banc reconsideration as moot.

Appellant Jason Rhodes pleaded guilty to the felony offense of forgery of a financial instrument and was placed on deferred-adjudication community supervision for a period of five years. Subsequently, the district court amended the conditions of Rhodes's community supervision to include a condition that he serve 180 days in jail. After Rhodes failed to report to jail on a certain date as scheduled by his probation officer, the State filed a motion to adjudicate. Following a hearing, the district court granted the motion, adjudicated Rhodes guilty,

and sentenced him to fifteen months in state jail. In a single point of error, Rhodes asserts that the district court abused its discretion in revoking his community supervision. We will affirm the order adjudicating guilt.

## BACKGROUND

After Rhodes was placed on deferred adjudication, he allegedly violated the conditions of his community supervision by writing two "hot checks," failing to provide a statement of his income and expenses, and failing to attend a cognitive education program. Rather than seeking to revoke Rhodes's community supervision based on these violations, the State agreed to continue Rhodes on community supervision in exchange for Rhodes agreeing that his conditions of community supervision be amended to include restitution in the amount of $11,175.00.

The district court scheduled a hearing for February 6, 2008, to approve the agreement. However, Rhodes did not appear at the hearing. On the day of the hearing, Rhodes represented to the court, his attorney, and others that his father-in-law had recently passed away, that he needed to attend the funeral in Taylor, and that, although Taylor was within Williamson County, he could not make it to court in time for the hearing. As Rhodes later admitted, however, he did not attend a funeral and, in fact, was not even in the state. Rhodes had left Texas without permission from his probation officer to work in Laramie, Wyoming. Rhodes made the decision to stay in Wyoming on the day of the hearing to complete a job. Rhodes returned to Texas later that night and turned himself in to the Williamson County Jail.

On February 11, 2008, the district court held a hearing to consider the agreement previously reached between the State and Rhodes. At the hearing, Rhodes, who had been in jail

2

since his return to Texas, apologized for lying to the court. The State, in response to Rhodes's conduct, requested that the court amend the conditions of his community supervision to include additional jail time. The district court agreed to the State's recommendation and amended Rhodes's community supervision as follows:

> The additional condition of probation—and I will reluctantly go along with the State's recommendation that he be continued on probation, but he will be required, as a condition of probation, to serve 180 days in the Williamson County Jail. In light of the financial circumstances of his family—I don't wish to punish his family, but I must punish his behavior—I will allow him to do the first 30 days consecutive within the next 90 days, and the remaining 150 days will be served in 30-day increments. And those will, basically, be scheduled in such a fashion that he can complete those by the end of his probation, which will be 2011. I do that in order that he will have a regular schedule that he can work around. He needs to set aside those 30 days. And they will be served in jail, and they will be served in 30-day consecutive increments.

Rhodes's attorney then asked whether Rhodes would need to "work . . . out with his probation officer . . . when he's going to go in" to the jail to serve his time. The district court replied, "That's right." At the conclusion of the hearing, the district court instructed the prosecutor to "make a note on the file that this is a very unusual case . . . if we have any trouble in the future."[1] The district court subsequently entered a written order amending Rhodes's condition of community supervision to include the condition that Rhodes "serve 180 days in jail."[2]

---

[1] In fact, the district court admonished Rhodes that "this is undoubtedly the most blatant occurrence" of lying to the court that the district court had experienced in sixteen years on the bench.

[2] Rhodes claims in his brief that no such written order was filed. While the written order was not included in the clerk's record, it has been included in a supplemental clerk's record that was requested by this Court.

In December 2010, the State filed a motion to adjudicate, alleging that Rhodes had violated the condition of his community supervision requiring him to serve 180 days in jail. The district court held a hearing on the motion. At the hearing, the district court considered testimony from several witnesses, including Michael Vohs, Rhodes's primary probation officer.

Vohs testified that after the district court ordered Rhodes to serve jail time, Vohs had Rhodes report to him on February 15, 2008. On that date, according to Vohs, he and Rhodes "essentially chose the dates of all future commitment orders." Vohs explained,

> We chose them together, in such a way that would—one, that he would know . . . the future jail time so he could plan his life around them. Also, I didn't want there to be any kind of confusion as to does he have to do them now or later and . . . you know, easy for him to get his life around. I felt it was easiest just to pick the days, these are the days, so he can plan his life around them.

Vohs added, "Just from prior interactions with Mr. Rhodes, I felt that you had to be very specific on some things. . . . I felt that I had to be extremely concrete with him, and with as little ambiguity as possible, so that he may not—so that there was no misunderstanding."

Vohs had the district court sign six different orders of commitment, one for each 30-day increment of jail time Rhodes was to serve. Rhodes was scheduled to report for his first 30-day sentence on May 7, 2008.[3] According to Vohs, Rhodes reported to jail on that date but filed a

---

[3] The subsequent incarceration dates, according to Vohs, were scheduled for January 2, 2009; May 6, 2009; January 1, 2010; May 6, 2010; and January 1, 2011. Vohs testified that the dates were scheduled such that Rhodes would report to jail twice a year in order that he could complete the entirety of his jail time in the three years remaining on his probation.

request with the district court to allow him to serve his jail time in smaller increments. The district court denied the request.

Rhodes was scheduled to begin his second 30-day sentence on January 2, 2009. However, in December 2008, Rhodes appeared at Vohs's office without an appointment and asked to have his jail time rescheduled because of how the previously scheduled date would adversely impact his new job and be a burden on his family. Vohs denied the request and reminded Rhodes, "You knew that these dates were not going to be changed." Vohs advised Rhodes that if he wanted the dates changed, he would need to hire an attorney. Rhodes turned himself in to the jail as scheduled on January 2.

Prior to Rhodes's third scheduled jail sentence set to begin on May 6, 2009, Rhodes hired an attorney and obtained a hearing before the district court to request a modified jail schedule. At the hearing, Rhodes asked to be allowed to serve his remaining 120 days as four-day weekends every month until all days had been served. Vohs testified that the district court denied the request but "advised that he would let the defendant pick other days and not have to do the days that were previously agreed."[4] The district court also agreed to let Rhodes do his third 30-day sentence at a later, unspecified time but required that the jail time continue to be served in 30-day increments.

_____

[4] There is no order in the record reflecting this change. However, on the date of the hearing, the district court entered the following notation on its docket sheet: "Court is fine with changing commitment dates, but defendant will have to serve 30 day increments until 180 days have been completed."

5

Rhodes subsequently was assigned a second probation officer, Inez Garza.[5] Vohs testified that on July 15, 2010, Rhodes and Garza agreed during a telephone conversation that Rhodes would begin serving his third 30-day jail sentence on July 23, 2010. Vohs added, "[Rhodes] had contacted Ms. Garza and picked the date. This is the date he wanted to do [his jail time]." On July 23, Vohs contacted Rhodes to inform him that the commitment order had been prepared and signed by the judge and that Rhodes needed to report to the jail by 6:00 p.m.[6] Vohs testified that Rhodes "seemed reluctant" to begin the jail time, but Vohs advised him, "You're supposed to be here." Later that day, Rhodes called Vohs and told him that because he had not heard from Garza, he did not believe he needed to report to the jail. Rhodes also expressed concern that if he went to jail, he would lose his job because he had not informed his employer that he was supposed to report to jail on the date in question. Vohs reminded Rhodes that he had previously agreed to the date and that, if Rhodes did not report to the jail as scheduled, "he should expect to go back to court on a violation report." Rhodes did not report to the jail as scheduled, and Vohs subsequently filed a probation-violation report.

Garza also testified at the hearing and agreed with the State that Rhodes was scheduled to report to jail on July 23. Garza added, "That was the date that he suggested" when they spoke on July 15. Garza subsequently "worked out the commitment order and sent it to

---

[5] This was because Rhodes was now reporting from Montgomery County where he was employed at the time.

[6] On cross-examination, Vohs acknowledged that the commitment order had not been signed by the court until the day Rhodes was scheduled to report to the jail. However, Vohs testified that he emailed Rhodes a copy of the commitment order that afternoon so that he would receive it prior to reporting to the jail that night. Rhodes acknowledged having received the commitment order that day.

Michael Vohs" to obtain the court's signature. Garza was shown a copy of the commitment order with the court's signature, acknowledged that the handwriting on the order was not her own, and speculated that the original commitment order she had sent to Vohs may have been lost at the probation department. Garza also acknowledged that after speaking with Rhodes on July 15, she did not speak with him again until July 26. On that date, Garza received a call from Rhodes informing her that he had not reported to the jail on July 23 because Garza had not called to confirm that date with him. Garza explained to Rhodes that it was his responsibility to contact her, not the other way around.

Rhodes testified in his defense. Rhodes testified that it was his understanding that after the district court had allowed him to change the dates during which he could serve his jail time, there was no set schedule for serving his time so long as he completed it by the end of his probation. In Rhodes's words, "It didn't matter when I got them done as long as I got them done." Rhodes testified that he did not suggest the July 23 start date as Garza had testified, but he did agree to it. According to Rhodes, Garza had told him that "she would try to get [him] in on the 23rd," but "for some reason in [Rhodes's] mind it was not confirmed." Rhodes acknowledged receiving the commitment order from Vohs via email on July 23, but he believed that he did not need to report to the jail as specified by the order because Garza had not previously confirmed the date with him. When Rhodes received the call from Vohs on July 23 telling him that the commitment order was signed and that he should report to the jail later that day, Rhodes told him, "I can't. I mean, it's too late in the day. I can't make it out there."[7] Rhodes also did not report to jail the following day or

---

[7] Rhodes testified that he was working in Montgomery County that day.

the day thereafter because he "didn't even know that was an option." When Rhodes called Garza on July 26, he asked her if he could wait to report until January, and she advised him that if he wanted to wait until then, he needed to hire an attorney and get permission from the court.

On cross-examination, Rhodes admitted that he understood his amended conditions of probation and his obligation to serve jail time as ordered. Rhodes also claimed that the less than one year remaining on his probation was sufficient time to complete his remaining 120 days of jail, even though, in the previous two-and-a-half years since the jail time had been ordered, he had completed only 60 days.

Cecil Scott, Rhodes's employer at the time, also testified at the hearing. Scott confirmed that Rhodes was working in Montgomery County on July 23, bailing hay. When asked if he was aware that Rhodes was supposed to report to jail on that date, Scott testified that he was, but also that Rhodes had told him that "it had not been confirmed."

At the conclusion of the hearing, the district court adjudicated Rhodes guilty and sentenced him to fifteen months' confinement in state jail. This appeal followed.

**STANDARD OF REVIEW**

A trial court's decision to adjudicate a defendant's guilt is reviewed in the same manner as a revocation of "ordinary" community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp. 2010). In other words, our review is limited to determining whether the trial court abused its discretion in determining that the defendant violated the terms of his community supervision. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Duncan v. State*, 321 S.W.3d 53, 56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). A trial court abuses

8

its discretion in revoking community supervision when the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State's burden of proof in community-supervision revocation cases is by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763-64. Thus, the trial court does not abuse its discretion in revoking community supervision if the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *See id*. at 764. We view the evidence presented in a revocation proceeding in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.). As the trier of fact, it is left to the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Garrett*, 619 S.W.2d at 174; *Mauney*, 107 S.W.3d at 695.

## ANALYSIS

In his sole point of error, Rhodes asserts that the district court abused its discretion in adjudicating his guilt based on a failure to serve his jail time. According to Rhodes, because his period of deferred adjudication was not set to end until November 2011, he still had time to comply with the condition. He adds that there was no requirement in the district court's order that he "complete the required jail time by a date certain."

As support for his position, Rhodes relies on *Dureso v. State*, 988 S.W.2d 448 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). In that case, Dureso was required as a condition of his probation to perform no less than 10 hours of community service per month. At the probation revocation hearing, Dureso's probation officer testified that Dureso had until March 21 to complete

the 10 hours of community service required for the month. When Dureso was arrested on March 3, he had already registered to start his community service and still had almost three weeks to complete his hours. The appeals court concluded that the district court abused its discretion in finding a violation of probation when Dureso still had time to perform the required community service hours. *See id*. at 450. The appeals court provided no further analysis on the issue.

Rhodes's case is distinguishable from *Dureso*. While it is true that Rhodes had until the end of his deferred adjudication to serve his remaining 120 days in jail, the district court had ordered Rhodes to serve his jail time in six 30-day increments as directed by the probation department and agreed upon by Rhodes. Thus, even though the district court did not specify the dates on which Rhodes would report to jail, Rhodes had to report to jail on the dates scheduled by the probation department to which he had agreed. Rhodes's probation officers, Vohs and Garza, both testified that Rhodes was scheduled to report to the jail for one of those increments on July 23, 2010, and that Rhodes had agreed to this date. By his own admission, Rhodes had agreed to the July 23 start date but did not report on that date. Rhodes testified that "for some reason in [his] mind" the date was never confirmed to him, and he claimed that Garza had previously told him that "she needed 14 days' notice to get a date" for the jail time.[8] However, the district court would not

---

[8] In his motion for rehearing, Rhodes emphasizes that no one contacted him prior to July 23 to confirm that he was scheduled to report on that date. However, based on Garza's testimony that it was Rhodes's responsibility to contact her, the district court could have reasonably inferred that it was also Rhodes's responsibility to confirm the start date if he was unsure of it. Additionally, the record supports a finding by the district court that Rhodes knew that he was required to report on that date. Garza testified that July 23 was the date Rhodes had suggested when he spoke with her on July 15, Vohs testified similarly, Rhodes acknowledged in his testimony that he had "agreed" to that date, and Rhodes's employer testified that he believed as early as "the week before, up to the

10

have abused its discretion in disbelieving Rhodes's unsubstantiated testimony, particularly in light of Rhodes's documented history of lying to the court. The record also reflects that Rhodes did not report to the jail on the days following July 23 even after being told by Vohs that he was "supposed to be there" and despite having been emailed a copy of the commitment order; that Rhodes had attempted to re-schedule his jail time on prior occasions; and that he had sought not to report to jail again until January 2011, which was ten months prior to the expiration of his deferred adjudication. Thus, the district court could have found that Rhodes had exhibited a pattern of attempting to evade his jail time in the past and that, by failing to report on July 23 as scheduled, Rhodes had at that time failed to serve his jail time as ordered. And, as the State pointed out during the hearing, in the two-and-a-half years since Rhodes had been ordered to serve jail time, he had completed only 60 days of his 180-day requirement. Based on that history, the district court would not have abused its discretion in finding that in the remaining eleven months of Rhodes's deferred adjudication, he would be unable to complete the remaining 120 days of jail time.[9]

Finally, in his motion for rehearing, Rhodes cites to four older opinions of the court of criminal appeals for the proposition that probation should not be revoked so long as the probationer makes "some effort" to comply with an "ongoing open condition" of probation such as "gainful employment."[10] We find these cases distinguishable. In each of the cases, the condition of gainful

---

weekend before" July 23 (a Friday) that Rhodes was supposed to go to jail on that date, even though Rhodes had told him that the date was not confirmed.

[9] In less than a year, Rhodes would have to complete four 30-day increments of jail time, which was twice as many as he had served in the previous two-and-a-half years.

[10] *See Gormany v. State*, 486 S.W.2d 324, 325 (Tex. Crim. App. 1972) (reversing revocation order based on failure of probationer "to work faithfully at suitable employment" when evidence

employment did not require that the employment be at the direction of the probation department. In contrast, the jail time required in Rhodes's case was under the direction of the probation department, and the evidence showed that by not reporting to jail on the agreed-upon date, Rhodes failed to comply with that condition. Moreover, in each of the cases Rhodes cites, the evidence did not show that the probationer had merely made "some effort" to comply with the condition of probation. Instead, the evidence showed that the probationer had in fact complied with the condition. On the other hand, the evidence in this case, discussed above, when viewed in the light most favorable to the trial court's ruling, showed that Rhodes failed to comply.[11]

We conclude that the State satisfied its burden to prove by a preponderance of the evidence that Rhodes violated a condition of his community supervision. Accordingly, on the facts

---

showed that probationer "had applied for a number of jobs; had secured employment four times and had a job to go to at the time he was arrested"); *Butler v. State*, 486 S.W.2d 331, 333-34 (Tex. Crim. App. 1972) (reversing revocation order based on failure of probationer to "work faithfully at suitable employment as far as possible" when evidence showed that probationer "had in fact secured a job and was en route to the job site with his employer when arrested"); *Steed v. State*, 467 S.W.2d 460, 461 (Tex. Crim. App. 1971) (reversing revocation order based on failure of probationer to "work faithfully at suitable employment as far as possible" when evidence showed that probationer was employed for two periods during her probation and was hospitalized and unable to work for other periods); *Perry v. State*, 459 S.W.2d 865, 866 (Tex. Crim. App. 1970) (reversing revocation order based on failure of probationer to "work faithfully at suitable employment and notify the probation officer prior to changing employment" when evidence showed that probationer "was gainfully employed when placed on probation," had worked for various employers during his probation, and had notified his probation officer each time of his change in employment).

[11] Rhodes also provides various justifications for his failure to comply, e.g., the absence of a commitment order or other confirmation prior to July 23, the importance to his employer of Rhodes completing his work on the day he was scheduled to report, and the length of time it takes to travel from Montgomery County to Williamson County. The district court would not have abused its discretion in finding that such justifications did not excuse Rhodes's failure to comply, particularly in light of the history of the case and Rhodes's admission that he understood his conditions of probation and his obligation to serve jail time as ordered.

12

and circumstances of this case, we cannot conclude that the district court abused its discretion in adjudicating Rhodes's guilt.  We overrule Rhodes's sole point of error.

**CONCLUSION**

We affirm the district court's order adjudicating guilt.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed on Motion for Rehearing

Filed:   October 5, 2011

Do Not Publish

13