# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-10-00658-CR
---

**Mark Cruz, Appellant**

**v.**

**The State of Texas, Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-05-202234, THE HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

Appellant Mark Cruz appeals the trial court's judgment revoking his community supervision and sentencing him to six years' imprisonment. In two points of error, Cruz asserts that the trial court abused its discretion in revoking his community supervision because the evidence failed to demonstrate the alleged violations. We affirm the judgment of revocation.

## BACKGROUND

In May 2006, Cruz pleaded guilty to the offense of criminal solicitation of a minor, opting to have a jury assess punishment. *See* Tex. Penal Code Ann. § 15.031 (West Supp. 2011). In January 2007, a jury assessed Cruz's punishment at confinement for ten years in the Institutional Division of the Texas Department of Criminal Justice and, in addition, assessed a $10,000 fine. *See id.* § 12.34 (West 2011). The jury recommended that both the sentence and fine be suspended and that Cruz be placed on community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 4

(West Supp. 2011). Accordingly, the trial court adjudicated Cruz guilty, sentenced him to serve ten years in prison, suspended imposition of the sentence and fine, and placed Cruz on community supervision for a period of ten years.

In May 2010, the State filed a motion to revoke community supervision, alleging that Cruz violated conditions of community supervision by not successfully completing a required sex-offender treatment program and by going within 1,000 feet of a premise where children commonly gather. After hearing testimony at the revocation hearing conducted in August 2010, the trial court found that Cruz violated the conditions of his community supervision, revoked his community supervision, and sentenced him to six years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decision to revoke community supervision for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside the zone within which reasonable minds might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). In a community supervision revocation proceeding, the State has the burden of proving a violation of the terms of community supervision by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763-64; *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The State satisfies this burden when the greater weight of the credible evidence before the court creates a reasonable belief that a condition of probation has been violated as alleged. *Rickels*, 202 S.W.3d at 764; *Jenkins v. State*,

2

740 S.W.2d 435, 437 (Tex. Crim. App. 1983). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona*, 665 S.W.2d at 493-94.

We view the evidence presented in a revocation proceeding in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.). The trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. *Garrett*, 619 S.W.2d at 174; *Mauney*, 107 S.W.3d at 695. When more than one violation of the conditions of community supervision is found by the trial court, proof by a preponderance of the evidence of any one of the alleged violations is sufficient to support revocation. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Atchison v. State*, 124 S.W.3d 755, 758 (Tex. App.—Austin 2003, pet. ref'd). Thus, the trial court's judgment will be upheld if the evidence is sufficient under any ground alleged. *See Dunavin v. State*, 611 S.W.2d 91, 101 (Tex. Crim. App. 1981).

## PROOF OF VIOLATION

In its motion to revoke community supervision, the State alleged, in the first of two violations, that Cruz had "fail[ed] to successfully complete sex offender therapy as [he] was unsuccessfully discharged from such on April 21, 2010." Condition No. 40 of Cruz's community supervision, in relevant part, required Cruz to:

> [e]nroll, actively participate in and cooperate fully in Sex Offender therapy as designated by Community Supervision Officer and while in such program, submit to a psychological or psychiatric testing evaluation as well as individual, family or group counseling as directed by said therapist/Community Supervision Officer and remain in such program until successfully completed, as determined by the therapist, and attend all sessions and complete all homework assignments.

3

At the revocation hearing, the State presented the testimony of Cruz's therapist, Scott Siegel. Siegel testified that he is a licensed professional counselor and a licensed sex-offender treatment provider who has been working with the Travis County community supervision department for nine years providing treatment for Travis County sex offenders. Siegel explained that a participant in sex-offender treatment is expected to attend weekly group sessions, attend monthly individual sessions, complete various written assignments, and participate in all forms of treatment, including truthful polygraphs.

Siegel testified that Cruz was terminated unsuccessfully from treatment on April 21, 2010. He explained that he discharged Cruz from treatment based on "a number of concerns that [he] had in regard to [Cruz's] behavior" and "his extremely high level of risk to sexually recidivate." The behavior concerning to Siegel included self-admitted stalking-type behavior of females on at least ten different occasions.[1] Siegel testified that Cruz's self-reported behavior demonstrated that he was not putting into practice the skills he was learning in therapy

---

[1] A local city bus driver testified at the revocation hearing that she witnessed Cruz attempt to pick up a young teenage girl—whom she believed to be 14 or 15 years old, or possibly younger—repeatedly trying to persuade her to get in his car. The girl refused Cruz's advances and boarded the bus. Upon questioning by the bus driver, the girl revealed that she was not acquainted with Cruz. The bus driver testified that once the girl got on the bus, Cruz followed the bus for about ten blocks and approached the girl again when she exited the bus. According to the driver's testimony, the girl seemed frightened by Cruz's conduct and the driver was so alarmed by his behavior that she took down the license plate of Cruz's car and had her dispatcher call 911.

In a letter that Cruz subsequently wrote to Siegel to explain this behavior, he indicated that the female he approached, and pursued, was an adult female. He later admitted to Siegel that he had approached approximately ten other females in a similar manner. Cruz also admitted in his letter that during his pursuit of this female, he drove through three different school zones. This admission was the basis for the State's second alleged violation that Cruz went within 1,000 feet of a premise where children commonly gather.

sessions. On cross-examination, Siegel testified that Cruz's stalking behavior was "the proverbial last straw" and that there were other factors that contributed to Cruz's unsuccessful discharge from treatment, including his lack of honesty throughout the course of treatment as demonstrated by his repeated unsuccessful attempts to pass polygraphs and his sexual arousal by teenage girls as evidenced by his penile plethysmograph results.

On appeal, Cruz presents several reasons why he should not have been terminated from the treatment program, but does not dispute the evidence that he was terminated. He asserts that repeatedly engaging in stalking behavior with adult women, failing polygraph tests, or becoming sexually aroused by teenage girls were not sufficient reasons to discharge him from the treatment program. He further contends that these were insufficient grounds for the trial court to revoke his community supervision.

Cruz first argues that merely approaching adult women in public was not inconsistent with his treatment program. However, while the letter introduced by the State indicated that Cruz said he approached an adult female, the bus driver testified that she believed the female to be a young teenage girl. The trial court was entitled to evaluate witness credibility and resolve this conflicting evidence. *See Garrett*, 619 S.W.2d at 174; *Mauney*, 107 S.W.3d at 695. Furthermore, Siegel's testimony reflected that his concern was the manner in which Cruz approached these unknown females in public—what he characterized as stalking behavior because of Cruz's persistence despite repeated refusals. This behavior was concerning to Siegel from a therapeutic perspective. Learning that a teenage girl was involved elevated Siegel's "already significant concern."

5

Cruz also contends that he should not have been terminated from the therapy program for failed polygraphs and further maintains that the trial court erred by accepting and relying on polygraph evidence because the results of a polygraph test are inadmissible "for all purposes" in any criminal proceeding, including a revocation proceeding. *Castillo v. State*, 739 S.W.2d 280, 293 (Tex. Crim. App. 1987); *accord Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007). However, the State did not offer evidence of Cruz's failed polygraphs nor allege such as a violation of community supervision. Rather, defense counsel elicited this information from Siegel during cross-examination. Moreover, the court of criminal appeals recently concluded that polygraph results may be admissible in a community-supervision revocation hearing as the basis for an expert opinion under Rules 703 and 705(a). *See Leonard v. State*, No. PD-0551-10, 2012 WL 715981, at *8 (Tex. Crim. App. Mar. 7, 2012). Such was the case here, as Siegel testified that the polygraph results were one of the factors taken into consideration in his decision to discharge Cruz from the treatment program. To Siegel, the failed polygraphs were indicative of Cruz's dishonesty in the course of his treatment.

Cruz further argues that Siegel wrongfully terminated him from treatment because his sexual attraction to teenage girls was not conduct he engaged in but rather his "status" since, Cruz asserts, his sexual-arousal response is non-volitional. He asserts that punishing him for his status violates due process. He also contends that the State failed to carry its burden of demonstrating that his response on the penile plethysmograph was volitional non-compliance with his terms of community supervision. However, the State did not offer evidence of Cruz's penile plethysmograph results nor allege his response as a violation of community supervision. Defense counsel elicited

6

this information on cross-examination of Siegel. Further, Siegel did not express that Cruz was terminated from the sex-offender treatment program because of his attraction to teenage girls.[2] A review of Siegel's testimony reflects that, in Siegel's opinion, Cruz's demonstrated sexual attraction to teenage girls, together with his failure to utilize skills imparted in therapy, created a significant risk that Cruz would sexually recidivate—a risk that was too great to be adequately addressed in therapy.

Contrary to his contentions, Cruz was not discharged from treatment because he repeatedly engaged in stalking behavior, failed polygraph tests, or demonstrated sexual attraction to teenage girls. Rather, the record reflects that, to Siegel, these behaviors showed Cruz's failure to implement the skills being taught in his therapy program and, ultimately, his failure to fully participate in all forms of treatment. It was the therapist's determination that Cruz was not putting into practice the behavior modification skills taught in therapy, as reflected by his behavior, that resulted in his discharge, not the actual behavior itself. Successful completion of treatment would necessarily require more than robotic attendance to therapy sessions; it would require improvement or, at the very least, demonstration of an attempt to improve by implementing the corrective skills imparted in therapy. *See, e.g.*, *Figgins v. State*, 528 S.W.2d 261, 262-63 (Tex. Crim. App. 1975);

---

[2] Arguably, if inappropriate sexual attraction were grounds for termination from sex-offender treatment programs, no sex offenders would be eligible for such programs in the first place. The purpose of sex-offender treatment is to address inappropriate sexual attraction and modify behavior related to such. *See, e.g.*, Tex. Gov't Code Ann. § 499.054 (West Supp. 2011) (defining "sex offender treatment program" as comprehensive treatment program that: (1) psychologically evaluates inmates serving sentence for sexual offense; (2) addresses motivation and psychosocial education of such inmates; and (3) provides relapse prevention training for such inmates, including interruption of cognitive and behavioral patterns that have led inmate to commit criminal offenses).

*Ott v. State*, 690 S.W.2d 337, 339 (Tex. App.—Eastland 1985, pet. ref'd). According to the evidence, Cruz did not progress and his conduct demonstrated his failure to apply the skills taught in treatment. Thus, the record contains evidence that Cruz was discharged from the treatment program because, based on his therapist's determination, he failed to fully participate in treatment.

Viewed in the light most favorable to the trial court's ruling, the record reasonably supports the trial court's belief by a preponderance of the evidence that Cruz failed to successfully complete sex-offender treatment as required by the conditions of his community supervision. We conclude that the trial court did not abuse its discretion by revoking Cruz's community supervision based upon this violation. We overrule his second point of error.[3]

## CONCLUSION

Finding no abuse of discretion in the revocation of Cruz's community supervision, we affirm the judgment of the trial court.

---

[3] Because our resolution of his second point of error is dispositive, we do not reach Cruz's remaining point of error. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (court declined to address appellant's other contentions since one sufficient ground for revocation supported trial court's order revoking probation); *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex. Crim. App. 1981) ("proof of any violation of the terms of probation will support an order revoking probation"); *see also* Tex. R. App. P. 47.1.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   May 10, 2012

Do Not Publish