**Opinion filed August 2, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00157-CR

_____

**JESUS SALDANA, JR., Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-37,317**

## M E M O R A N D U M   O P I N I O N

Jesus Saldana, Jr.[1] appeals from a judgment adjudicating him guilty of the offense of sexual assault of a child.[2] Appellant originally pleaded guilty to the offense. Pursuant to the plea bargain agreement, the trial court deferred adjudication of guilt, placed appellant on

---

[1]We note that this is the name shown in the charging instrument but that the judgment shows appellant's name to be Jesus Lorenzo Saldana, Jr.

[2]In Cause No. 11-11-00158-CR, appellant appeals from the trial court's judgment adjudicating him guilty of the offense of failure to comply with sex offender registration requirements. Today, in a separate opinion, we affirm the trial court's judgment in Cause No. 11-11-00158-CR.

community supervision for eight years, and assessed a fine of $500. In April 2011, the State filed a motion for warrant and to adjudicate guilt. In its motion, the State alleged that appellant violated the terms of his community supervision as follows:

1. On or about March 29, 2011, [appellant] did go within 1000 feet of a premise where children commonly gather, including schools, to wit: Odessa High School. This is a violation of Rule (23) of the Additional Rules of Community Supervision.

2. On or about March 29, 2011, [appellant] did have indirect contact with the victim and went near the school of the victim. This is a violation of Rule (25) of the Additional Rules of Community Supervision.

3. On or about March 29, 2011, [appellant] did have direct contact with a minor child under the age of 17 and not supervised by an adult who is over the age of 21 years and said adult is approved by the [appellant's] probation officer. This is a violation of Rule (27) of the Additional Rules of Community Supervision.

4. On or about November 1 and December 1, 2010, [appellant] failed to make a minimum monthly payment of $60.00 toward his Supervision Fee and Sex Offender Supervision Fee. This is a violation of Rule (m) of the Rules of Community Supervision.

5. On or about January 1 and February 1, 2011, [appellant] failed to make a minimum monthly payment of $60.00 toward his Supervision Fee and Sex Offender Supervision Fee. This is a violation of Rule (m) of the Rules of Community Supervision.

The trial court held a hearing on the State's motion. At the hearing, appellant pleaded "[n]ot true" to all the State's allegations. After the evidence was concluded, the State abandoned Allegation 3. The trial court found Allegations 1, 2, and 4 to be true, and Allegation 5 to be not true. Therefore, the trial court found that appellant had violated the terms and conditions of his community supervision, adjudicated appellant guilty of the offense of sexual assault of a child, imposd a sentence of confinement for twenty years, and assessed a fine of $380. We affirm.

*Issues Presented*

Appellant presents two issues. In his issues, appellant contends that the evidence was legally and factually insufficient to support the trial court's findings that he violated the terms and conditions of his community supervision and that, therefore, the trial court abused its discretion by revoking his community supervision and adjudicating his guilt.

*Standard of Review*

A trial court's decision to proceed to an adjudication of guilt and to revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2011); *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.—Eastland 2008, pet. ref'd). Given the unique nature of revocation proceedings and the trial court's broad discretion in the proceedings, the general standards for reviewing evidentiary sufficiency do not apply to a trial court's decision to revoke community supervision. *Miles v. State*, 343 S.W.3d 908, 913 (Tex. App.—Fort Worth 2011, no pet.); *Antwine*, 268 S.W.3d at 636–37; *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd). Instead, we review a trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Hart v. State*, 264 S.W.3d 364, 366 (Tex. App.—Eastland 2008, pet. ref'd). In determining questions regarding the sufficiency of the evidence in cases involving the revocation of community supervision, the State's burden of proof is by a preponderance of the evidence, which means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition" of his community supervision. *Rickels*, 202 S.W.3d at 763–64.

Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Antwine*, 268 S.W.3d at 636; *Hart*, 264 S.W.3d at 367. Thus, if the greater weight of the credible evidence creates a reasonable belief that a defendant violated a condition of his community supervision, a trial court does not abuse its discretion by revoking community supervision, and the trial court's decision must be upheld. *Rickels*, 202 S.W.3d at 763–64; *Pierce*, 113 S.W.3d at 436. On the other hand, if the State fails to meet its burden of proof, a trial court abuses its discretion by revoking community supervision. *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984); *Cantu v. State*, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.); *Antwine*, 268 S.W.3d at 636. The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling.

*Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Hart*, 264 S.W.3d at 366.

*Evidence at the Adjudication Hearing*

M.C. was appellant's victim in the underlying sexual-assault-of-a-child offense. At the time of the adjudication hearing, M.C. was seventeen years old and a junior at Odessa High School. M.C. testified that, on March 29, 2009, at about 11:00 a.m., she and her friend, O.S., saw appellant in the bus mall of the Odessa High School campus. She said that the bus mall was the area where students were dropped off from buses and that the bus mall was located between the main building and the music building on the campus. M.C. said that she saw appellant walk toward a girl and then hug the girl. M.C. said that appellant looked in her direction but that she did not know whether appellant saw her.

M.C. testified that she was scared when she saw appellant. After seeing appellant, M.C. and O.S. went to the main office to report that they had seen him on campus. M.C. told Assistant Principal Berzoza and Ector County Independent School District Police Officer Paul Carr what had happened. Officer Carr testified that M.C. and O.S. told him that they had seen a man on campus who was not supposed to be there. Officer Carr said that M.C. was crying and upset and that she said the man's name was "Jesus." M.C. testified that she knew where appellant lived and that the underlying sexual assault had occurred in his house. M.C. told Officer Carr that appellant lived a couple of blocks away from Odessa High School. M.C. and Berzoza got into Officer Carr's vehicle, and Officer Carr drove to the area where appellant lived. M.C. showed Officer Carr appellant's house. As Officer Carr drove by the house, he and Berzoza saw a wheelchair by the door to the house. Berzoza and Officer Carr believed that the wheelchair belonged to an Odessa High School female student. Officer Carr parked his vehicle, and then he and Berzoza exited the vehicle and approached appellant's house to do a welfare check on the student. M.C. remained in the vehicle.

Officer Carr testified that, as he and Berzoza approached the house, they were met by a man in the doorway. Officer Carr said that the man was wearing clothes that matched the description of the clothes that M.C. and O.S. reported that appellant was wearing when they saw him at the bus mall. Officer Carr said that he saw two Odessa High School female students sitting in the living room. The man identified himself to Officer Carr as appellant. Appellant told Officer Carr that he had carried one of the students from her wheelchair to his couch. The

4

female students told Officer Carr that they were okay and that they had come to appellant's house to eat lunch.

M.C. testified that Officer Carr had appellant stand on his porch and that she identified appellant to Officer Carr as being the man whom she had seen on the Odessa High School campus. Because Officer Carr believed that the students in appellant's house were safe, he drove Berzoza and M.C. back to campus. Later that afternoon, Officer Carr returned to appellant's house and wrote appellant a criminal trespass warning. Officer Carr testified that appellant admitted to him that he had been on the Odessa High School campus earlier that day. Officer Carrr testified that appellant told him the reason he had been on the campus was that a couple of his "home girls" were having trouble.

Appellant testified that he was not on the Odessa High School campus on March 29, 2009. He admitted that he referred to the female students who were in his living room as his "home girls" when he talked with Officer Carr. Appellant said that he told Officer Carr one of the girls "was having problems with a dude." Appellant said that neither of the girls was under the age of seventeen. Appellant said that he never told Officer Carr that he had been on the Odessa High School campus.

*Analysis*

M.C. testified that she saw appellant on the Odessa High School campus. Officer Carr testified that appellant told him that he had been on the campus. Appellant denied making this statement to Officer Carr. Appellant testified that he had not been on the Odessa High School campus. As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the trial court was free to accept M.C.'s and Officer Carr's testimony and to reject appellant's testimony. *Miles*, 343 S.W.3d at 913. The trial court's ruling demonstrates that it believed M.C.'s and Officer Carr's testimony. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court could have reasonably found that appellant violated the terms and conditions of his community supervision by going within 1,000 feet of Odessa High School and by having indirect contact with M.C. and going to her school. Either of these violations, standing alone, is sufficient to support the trial court's revocation order. *Moore*, 605 S.W.2d at 926; *Antwine*, 268 S.W.3d at 636. Therefore, we need not address appellant's contention that the evidence was insufficient to support the trial court's finding that

5

he violated the terms and conditions of his community supervision by failing to pay his monthly supervision fees on November 1, 2010, and December 1, 2010.

Because the record contains evidence supporting the trial court's determination that appellant violated the terms and conditions of his community supervision, we conclude that the trial court did not abuse its discretion by proceeding with an adjudication of guilt. Appellant's issues are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

August 2, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.