**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00625-CR**
_____

**JEREMY DEMOND DOUGLAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 10-10458**

**MEMORANDUM OPINION**

Jeremy Demond Douglas appeals the trial court's decision to revoke its order placing him on community supervision. Douglas argues that evidence is insufficient to show that he burglarized a habitation, violating the conditions of the community supervision order at issue. Based on his indigence, Douglas also argues the trial court should not have ordered that he pay fees that he argues were associated with his defense, nor should the trial court have ordered that he pay various costs. We conclude the evidence is sufficient to support the trial court's finding that Douglas violated the conditions of his community supervision by committing burglary. We also conclude that

1

the trial court did not err by ordering that Douglas pay the restitution award, administrative fees,[1] and court costs that are at issue.

In carrying out a plea bargain agreement, Douglas pled guilty to committing an aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2011). The trial court found the evidence sufficient to find Douglas guilty of an aggravated robbery, which had occurred in October 2010, deferred further proceedings, placed Douglas on community supervision for ten years, and ordered that he pay $15,515.07 in restitution. Before Douglas completed serving the term required by the community supervision order, the State filed a motion to revoke, requesting that the trial court revoke the community supervision order. The motion to revoke alleges that Douglas had violated the order in August 2011 by burglarizing a habitation and that Douglas had failed to pay court assessed fees.

At the revocation hearing, Douglas pled "[n]ot true" to the State's allegation that he had burglarized a habitation, and "[t]rue" to the allegation that he had failed to pay court assessed fees. After hearing testimony from two witnesses and from Douglas, as well as admitting other evidence regarding the August 2011 burglary, the trial court found that Douglas had violated a condition of his community supervision by burglarizing a habitation. At the conclusion of the hearing, the trial court revoked its community supervision order, found Douglas guilty of having committed the October

---

[1]The administrative fees include supervision fees, a crime stopper fee and a PSI fee.

2010 aggravated robbery, assessed a sentence of eighty-five years in prison, ordered that Douglas pay $15,515.07 in restitution, and ordered that he pay administrative fees of $822 and court costs of $631.

In issue one, Douglas argues the evidence is insufficient to support the trial court's finding that he violated his community supervision order by committing a burglary in August 2011. We review a trial court's order revoking community supervision under an abuse of discretion standard. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006).

In a community supervision revocation proceeding, the State must prove by a preponderance of the evidence that the defendant has violated a condition of his community supervision. *See Rickels*, 202 S.W.3d at 763-64. "When the State has failed to meet its burden of proof, the trial judge abuses his discretion in issuing an order to revoke[.]" *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). "Proof of a single violation is sufficient to support a revocation." *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In reviewing the evidence that was before the trial court, we note that the trial court had the responsibility to judge the credibility of the witnesses and the weight to give the evidence admitted during the hearing. *Canseco*, 199 S.W.3d at 439. Therefore, in reviewing the trial court's decision to revoke, the evidence presented during the hearing is reviewed on appeal in the light most

favorable to the trial court's ruling. *See Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

Burglary of a habitation can be committed in several ways. For example, a person is guilty of burglarizing a habitation if, without the effective consent of the owner, the person enters the habitation intending to commit a theft. *See* Tex. Penal Code Ann. § 30.02 (West 2011). To prove that Douglas burglarized a house, the State presented two witnesses. The State's first witness, T.L., testified that on August 31, 2011, Douglas and two other men asked her if she wanted to buy a television; she told them yes. T.L. overheard the two others say they were going to "hit [a neighbor's] house." According to T.L., when Douglas and the others left, they went across the street to the neighbor's house they said they were going to burglarize. T.L. noticed that the men put towels over their heads as they approached the neighbor's house, but then they disappeared from view. At that point, T.L. called the police; after the police arrived, the police approached the back of the neighbor's house. T.L. saw Douglas and the other men come out of the front door of the neighbor's house, and she saw Douglas walk away from the scene. Later, the police took T.L. to Douglas's mother's house, and T.L. identified Douglas as the person she had seen leaving the neighbor's house. T.L. also identified Douglas at the revocation hearing.

The State's second witness owned the house where the August 2011 burglary occurred. The homeowner testified that on August 31, 2011, when she returned to her

4

house, she found that it had been broken into and ransacked. The homeowner found that several items had been taken, including jewelry. The homeowner testified that she did not give Douglas permission to enter her home or to take anything from it.

Douglas also testified during the revocation hearing. According to Douglas, he was with the two other men in August 2011 when he told T.L. that he would check to see if anyone had a television for sale. After talking to T.L., Douglas claimed he was walking home by himself when the police stopped him, claiming that he had burglarized a house in the neighborhood. Douglas admitted that he ran from the police after they told him he was under arrest; but, according to Douglas, he ran and hid at his mother's house because he was scared. Subsequently, Douglas refused to turn himself in; the police arrested him at his mother's house. Douglas claimed that T.L. had falsely accused him of burglarizing the house because before the date the offense occurred, they had argued.

The testimony during the revocation hearing allowed the trial court to infer that Douglas entered the house without the homeowner's permission intending to commit a theft. The question of whether Douglas entered the house was established by T.L.'s testimony. "It is well established that a conviction may be based on the testimony of a single eyewitness." *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)). The trial court was free to credit the homeowner's testimony that she did not give Douglas permission to enter her home. As the exclusive judge of the credibility of the witnesses,

the trial court was free to reject Douglas's claim that T.L. had falsely accused him of burglary. *See Canseco*, 199 S.W.3d at 439. The trial court also reasonably inferred that Douglas entered the home intending to commit theft based on the homeowner's testimony that she found items missing from her home after finding it ransacked. The judgment is also supported by testimony that Douglas was seen approaching and then leaving the house, testimony that he did not have the homeowner's permission to be there, and testimony indicating that he fled to avoid arrest.

Viewing the evidence in a light most favorable to the trial court's ruling, we conclude the evidence is sufficient to prove, by a preponderance of the evidence, that Douglas violated at least one condition of the trial court's community supervision order. *See Rickels*, 202 S.W.3d at 763-64; *Garrett*, 619 S.W.2d at 174. We further conclude the trial court did not abuse its discretion in revoking the community supervision order. *See Rickels*, 202 S.W.3d at 763-64; *Canseco*, 199 S.W.3d at 439. We overrule Douglas's first issue.

In issue two, Douglas contends the trial court erred by ordering that he pay attorney's fees related to his defense, and by ordering that he pay court costs. According to Douglas, the trial court found that he was indigent, and nothing in the record shows a material change occurred with respect to his financial circumstances. It is undisputed that the trial court found Douglas indigent in connection with the revocation proceedings, and that he was also found to be indigent for purposes of this appeal.

In support of his claim the trial court erred in awarding the fees and costs at issue, Douglas relies on articles 26.04(p) and 26.05(g) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 26.04(p), 26.05(g) (West Supp. 2012). Article 26.04(p) provides that a defendant, who is determined to be indigent, is presumed to remain indigent for the remainder of the proceedings unless a change in the defendant's financial circumstances occurs. *Id.* art. 26.04(p). Article 26.05(g) authorizes trial courts to require that a defendant contribute to the expense of a court-appointed attorney in the following circumstance:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

*Id.* art. 26.05(g). Douglas's argument also relies on *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010). In *Mayer*, the Texas Court of Criminal Appeals concluded that the evidence of the defendant's financial resources and ability to pay was insufficient to support court-ordered payment of court-appointed-attorney's fees. *See* 309 S.W.3d at 555-56; *see also Roberts v. State*, 327 S.W.3d 880, 884 (Tex. App.—Beaumont 2010, no pet.) (applying *Mayer*, we concluded that no evidence supported the trial court's decision that a defendant could pay attorney's fees where no evidence was introduced that showed the defendant's finances had materially changed after having been found to be indigent). In determining that the trial court erred in ordering the defendant to pay court-appointed-

attorney's fees, the *Mayer* Court relied upon the language of article 26.04(p), which requires a showing that the indigent's financial circumstances had changed. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p); *Mayer*, 309 S.W.3d at 556-57.

Although Douglas relies on articles 26.04(p) and 26.05(g) to support his arguments, the record shows that Douglas was not ordered to reimburse or pay for having received court-appointed counsel. The trial court's records reflect that no attorney's fees were included in the $822 the trial court awarded as administrative fees. Instead, the trial court awarded various administrative fees, taxed Douglas with court costs, and ordered that he reimburse those who suffered financial losses which resulted from Douglas's 2010 robbery.

Restitution awards are authorized by statute. *See* Tex. Code Crim. Proc. Ann. art. 42.037(a) (West Supp. 2012). The provision authorizing a trial court to order restitution in addition to a fine does not require the trial court to consider the defendant's ability to pay the restitution award. *See id.* art. 42.037(c) (West Supp. 2012).[2] Additionally, Douglas's indigency did not prevent the trial court from assessing the administrative fees and court costs at issue. The provisions that govern the payment of administrative fees and court costs in a criminal proceeding do not reference the defendant's ability to pay;

---

[2]The trial court revoked its community supervision order because Douglas committed a burglary, not because he failed to make restitution as required by the order. Nevertheless, had the trial court revoked its community supervision order in Douglas's case on the basis that he had failed to comply with the restitution that it ordered, the trial court would have had to consider Douglas's ability to pay. *See* Tex. Code. Crim. Proc. Ann. art. 42.037(h) (West Supp. 2012).

instead, the Code of Criminal Procedure requires a person convicted of an offense to pay certain designated fees as costs. *See* Tex. Gov't Code Ann. § 102.021 (West Supp. 2012). Additionally, section 103.021 of the Government Code, which authorizes a trial court to order a defendant to pay certain additional fees and costs, does not prevent a trial court from taxing the costs at issue here when a defendant is unable to pay them. *See id.* § 103.021 (West Supp. 2012).

We conclude that the provisions of section 103.021, like those of section 102.021, allow trial courts to award certain costs, including those that were assessed against Douglas, without regard to whether he could actually pay them. Because the Legislature authorized trial courts to award restitution and to tax the administrative fees and the court costs at issue without regard to a defendant's ability to pay them, the trial court did not err by including these awards in its final judgment. We overrule issue two. Having overruled both of Douglas's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 27, 2012
Opinion Delivered December 19, 2012
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.

9