**Opinion issued March 12, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NOS. 01-11-01024-CR**
**01-11-01025-CR**
**01-11-01026-CR**
**01-11-01027-CR**

_____

**ROGER RAY COOK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1206882, 1206883, 1206884, & 1206885**

**MEMORANDUM OPINION**

A Harris County grand jury indicted Roger Ray Cook for three felony

offenses of indecency with a child and one felony offense of aggravated sexual

assault of a child. Pursuant to a plea bargain with the state, Cook pleaded guilty to the four offenses in exchange for a sentence that, among other things, included deferred adjudication community supervision for five years.

One year after the trial court sentenced Cook, the State moved to adjudicate guilt. The State charged that Cook had violated various terms of his community supervision. Cook pleaded not true. After an evidentiary hearing, the trial court found five of the charged violations to be true, adjudicated Cook guilty, assessed a sentence of eight years' confinement, and certified his right to appeal the adjudication.

Cook contends that the evidence does not support the trial court's true findings and that his trial counsel rendered ineffective assistance in defending him against one of the charged violations. Finding no error, we affirm.

## Background

The trial court held an evidentiary hearing on the State's motion to adjudicate guilt. Among the charged violations were "[h]aving contact with and hiding a minor child" and "interfering with a peace officer's investigation of the child's safety."

Harris County Probation Office Supervisor Darla Temple testified that, on July 11, 2011, she received a telephone call from Lance Losey. Losey and his wife, who lived near Cook, were aware of Cook's status as a sex offender. Losey

reported that he had seen a child outside Cook's residence and had taken a picture of the child in Cook's front yard. Temple alerted the Houston Police Department, which sent out a call for welfare check concerning the report. Officer Athjemar, who was nearby in a police cruiser, responded to the call. As he drove into the cul-de-sac toward Cook's address, the Loseys flagged him down.

Officer Athmejar found Cook in his backyard with another man. Cook denied that any children were present. Athjemar noticed Cook's wife, Maricella, standing inside the house near a window and looking outside. She came to the front door, stepped out, and then went back inside. Then, she came out again and demanded to know what was going on. Athjemar told her that he was there to find out whether a child was there and, if so, to make sure the child was safe. Athmejar asked to inspect the house, and Maricella agreed to let officer enter. Athmejar looked to the right and noticed a pair of pink child's shoes on the floor that looked as if they had been kicked off. He also saw an open mini-can of soda and a plate of food nearby on the coffee table. A cartoon played on the television in front of the coffee table. To Athjemar, the scene appeared as if a child was on the property or had recently left. In dining area, Athjemar noticed a small inflatable ball, decorated with a picture of a pink bear, which appeared to have rolled underneath the dining table. Athmejar took photographs of the scene. As he stepped outside,

3

he saw a doll carriage parked just outside the back door and a tricycle in the middle of the backyard.

Meanwhile, the Loseys, suspecting that the child still was nearby, drove behind Cook's backyard fence, which abuts a bayou. Meanwhile, Athjemar placed Cook, Maricella, and the man who was present with Cook in the backyard in the back of a police cruiser. The Loseys returned to the scene shortly, with the child. She had been alone next to the bayou, and was crying and appeared upset. Athmejar noticed that her arm was scratched. The child was Maricella's grandchild.

Cook denied knowing that child was at the house; he claimed to have been in the backyard welding all day. A close friend of the child's family, John Orellana, also testified. On the day of the incident, he recounted, he was babysitting the child and helping Maricella's daughter move to a new apartment. Orellana brought the child with him when went to the house to borrow Maricella's truck. According to Orellana, the child needed to use the bathroom, so Orellana carried her through the backyard and took her into the house. Maricella was not in the house, and they stayed inside only long enough for the child to use the bathroom. The child did not have time to take off her shoes or watch a cartoon. Orellana explained he fled because he heard the police coming and had his own problems.

4

**Discussion**

*Standard of Review*

When a trial court decides to adjudicate the guilt of a person who has been placed on deferred adjudication community supervision, we review that decision in the same manner as a decision to revoke community supervision in a case in which an adjudication of guilt has not been deferred. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2012). Appellate review of an order adjudicating guilt is limited to determining whether the trial court abused its discretion. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006.

We examine the evidence in a light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). As the sole trier of fact, a trial court determines the credibility of witnesses. *See id.*; *Jones v. State*, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). A single sufficient ground for revocation will support a trial court's order adjudicating guilt. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston 2012, no pet.).

*Adjudication of Guilt*

Cook challenges the trial court's finding that he hid a child and interfered with a police investigation. Cook observes that Athmejar had detained him in a police cruiser, which prevented him from engaging in any subterfuge. The trial court could have concluded, however, that Cook had concealed the child's presence upon Athmejar's arrival and had directed others to assist him in doing so. The toys, cartoons, and food found in the living room suggest that the child had been at the home for more than the brief time suggested by Orellana. The evidence supports a reasonable inference that Cook was alarmed by the arrival of the police and, in response, concealed or assisted in concealing the child behind the fence. Cook denied that a child was present at house, but items in the house and yard suggested that a child had been present. This evidence supports the trial court's finding that Cook interfered with Athmejar's investigation.

Section 38.15 of the Texas Penal Code provides that a person commits an offense "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with" an officer's exercise of authority in furtherance of an investigation into child safety. TEX. PENAL CODE ANN. § 38.15(a) (West 2011). Cook contends that hiding a child can only be an intentional act; and no evidence suggests that he negligently impeded the investigation. Under the Texas Penal Code, however, "proof of a higher degree of culpability constitutes proof of the

6

culpability charged." TEX. PENAL CODE ANN. §§ 6.02(e) (West 2011). Whether the facts show Cook acted with negligence or intent, they support the trial court's finding that Cook hid a child and interfered with the investigation.

Leaving aside the applicability of section 38.15, moreover, other evidence that Cook had contact with a child in violation of the terms of his community supervision and hid the child supports the trial court's adjudication of guilt. Cook's unqualified denial that a child was at the house—despite the presence of toys and shoes scattered on the floor, cartoons on the television, and food set out on a low table—provides a reasonable basis for the trial court's decision to reject his explanation. The trial court also was not required to credit Cook's statement that he had not been inside the house all day. Also, both the tricycle in the center of the backyard and doll carriage by the door indicate that the child recently had spent some time in the backyard.

Because sufficient evidence supports the trial court's true findings to these two grounds, we do not reach Cook's remaining issues challenging the trial court's findings that he violated other terms of his community supervision. *See Moore*, 605 S.W.2d at 926 (explaining that single ground supporting trial court's action ends inquiry into appellant's challenge); *Silber*, 371 S.W.3d at 611. For the same reason, we do not reach Cook's contention that his trial counsel rendered ineffective assistance in defending him against one of the remaining charged

violations. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984) (explaining that second prong of ineffectiveness test requires appellant to show existence of reasonable probability that, but for counsel's unprofessional errors, result of proceeding would have been different).

## Conclusion

We hold that the trial court acted within its discretion in adjudicating Cook's guilt based on the evidence presented. We therefore affirm the judgment of the trial court. All pending motions are dismissed as moot.


Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).