Jesse GARRETT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 67750.

Court of Criminal Appeals of Texas,
Panel No. 1.

July 22, 1981.

Wendel A. Withrow, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., Judy Speer, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

Appellant appeals from the trial court's order revoking his five year probation he received on April 18, 1980, for the offense of burglary of a building. After ordering the probation revoked, the trial court, using his discretion, reduced the term of imprisonment from five years to three years. See Art. 42.12, Sec. 8(a), V.A.C.C.P.

The State's motion to revoke alleged that appellant had violated condition (a) of his probation, that is, he shall "Commit no offense against the laws of Texas or any other State or the United States, or any Governmental entity," in that:

1a. On or about the 17th day of July, 1980, in Potter County, Texas, Jesse Garrett, Jr., did then and there knowingly and intentionally threaten Ronald Hudson with imminent bodily injury by threatening to sic a doberman pinscher dog on the said Ronald Hudson.

1b. On or about the 17th day of July, 1980, in Potter County, Texas, Jesse Garrett, Jr., did then and there knowingly and intentionally threaten M. H. Williams with imminent bodily injury by threatening to sic a doberman pinscher dog on the said M. H. Williams.

1c. On or about the 17th day of July, 1980, in Potter County, Texas, Jesse Garrett, Jr., did then and there knowingly and intentionally threaten James Blaylock with imminent bodily injury by threatening to sic a doberman pinscher dog on the said James Blaylock.

1d. On or about the 17th day of July, 1980, in Potter County, Texas, Jesse Gar-

rett, Jr., did then and there knowingly and intentionally threaten Jesse Garrett, Sr. with imminent bodily injury by threatening to sic a doberman pinscher dog on the Jesse Garrett, Sr., and by threatening to cut the said Jesse Garrett, Sr. with a knife.

The trial court found against appellant on all of the allegations and ordered the probation revoked.

We shall briefly attempt to reconstruct the events involving "Tiny," appellant's Doberman pinscher, appellant, his wife, his father, the Nixons, and police officers who went to the Nixons' house and later went to a nearby bar ditch, where the altercation that eventually led to Tiny's early demise occurred.

V.T.C.A. Penal Code, Sec. 22.01, provides in pertinent part:

\* \* \* \* \* \*

(a) A person commits an offense if he:

\* \* \* \* \* \*

(2) intentionally or knowingly threatens another with imminent bodily injury, including his spouse;

\* \* \* \* \* \*

Officer James Blaylock, a City of Amarillo police officer, testified that on July 17, 1980, he received a police dispatch call to go to a 7–11 convenience store to investigate an "aggravated assault." After arrival, he came into contact with the Nixons, who informed him that appellant had assaulted them and forced them to leave their residence. The testimony later showed that appellant telephoned his father and told him that he and Nixon had gotten into a fight and Nixon had cut his wrist with a knife. As a result of this telephone call, appellant's father drove toward the Nixons' residence where he encountered appellant, appellant's wife, and Tiny at the bar ditch. Blaylock went to the Nixons' house, where he came into contact with appellant's hysterical wife. She informed him that her husband was "dying and bleeding." Blaylock went inside the residence and found appellant "sitting in the middle of the living room floor with his [left forearm] cut

and bleeding." Refusing treatment offered by Blaylock, appellant then "crawled on his hands and knees outside the front door and into the front yard where he grabbed a black and tan Doberman dog," later shown to be Tiny.

Appellant, while kneeling and holding a collarless Tiny, would point Tiny at Blaylock and say to the dog, "Look," at which time Tiny would look at Blaylock. Once, appellant "let the dog lunge towards [Blaylock], but [did] not let him go."

Since the Nixons had told Blaylock that all they wanted was for appellant to leave their residence, Blaylock told appellant "if he would leave, there would be no problem for him." Appellant then commenced walking down the street with his wife, leading Tiny by a belt around its neck.

After appellant left, the Nixons returned to their residence. While talking with them, Blaylock heard noises coming from the direction in which appellant had gone. He told Officer Williams, his back-up unit, to go and check on the noise. At this time, Officers Hudson and Reese also appeared and they, too, were directed by Blaylock to go where the noise was coming from, later shown to be the location of the bar ditch.

Williams, Hudson, Reese, an ambulance with an unidentified driver, Potter County Deputy Sheriffs, and appellant's father all subsequently arrived at the bar ditch where appellant was then located and encircled appellant and Tiny. When one of the officers or appellant's father would approach him, appellant would point Tiny at the person and say: "Look," "Watch," "See," or "Sic em." During this period of time, Tiny appeared nervous and was constantly growling, whimpering and whining.

Appellant's father testified that he and appellant did not get along very well. Each had threatened to kill the other in the past and had also engaged in fisticuffs with one another. After appellant's father got out of his vehicle, he approached appellant, who then pulled a knife on his father and exclaimed: "You bastard, I will kill you." The father then returned to his vehicle, got

a baseball bat that belonged to appellant, and then told appellant: "You bastard, let's get at it," which statement was made in response to appellant's threat to kill his father. During this confrontation and "curse fight," the ambulance and police units arrived.

Officer Williams testified that at the bar ditch location he advised appellant that he was under arrest, and that he should release Tiny or the police would have to shoot the dog. When appellant pointed Tiny at Williams and "shoved him forward" and said, "See. Sic," Williams then withdrew his service revolver and shot Tiny in the chest. However, to put Tiny out of his misery, Hudson then got his shotgun and "destroyed the dog." After Tiny was shot, appellant told the police: "Okay. Damn, I give up," although he had previously threatened to have Williams charged with assault and put in jail if he shot Tiny.

John Nixon and his wife testified favorably for appellant, denying that appellant threatened anyone with Tiny at the bar ditch. John testified that "[Tiny] would not hurt nobody. He would smile at you." He also denied he earlier had a conversation with Blaylock.

Appellant testified and confirmed that he and his father did not get along very well. He also testified that he and his wife left the Nixon house when advised to do so. Appellant testified he shortly thereafter met his father, who had gotten out of his car with a baseball bat in hand, on the road near the bar ditch. The first words appellant heard his father say were: "That was wrong what you said about Linda [appellant's father's then wife] and I'm going to kill you." Appellant's father began to approach appellant, who then started backing up in the bar ditch. The gist of appellant's testimony thereafter is that he refused to release Tiny because he was in fear of his father and was merely protecting himself through the use of Tiny.

Appellant's assertion that no assault was committed by him because he was using the dog to defend himself against the threatening actions of his father and the

Police Officers is controverted by the bulk of the testimony. It is the law in Texas that the burden of proof in a probation revocation proceeding is by a preponderance of the evidence, see *Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1974), and this Court must view the evidence in a light most favorable to the verdict, *Fernandez v. State*, 564 S.W.2d 771 (Tex.Cr.App.1978); *Jones v. State*, 589 S.W.2d 419 (Tex.Cr.App. 1979). Whether the trial court abused its discretion in revoking the probation is the only issue presented in this appeal. *Lloyd v. State*, 574 S.W.2d 159 (Tex.Cr.App.1978). It is the trial court's duty to judge the credibility of the witnesses and to determine whether the allegations in the motion to revoke are true or not. *Langford v. State*, 578 S.W.2d 737 (Tex.Cr.App.1979).

Sec. 22.01(a)(2), supra, basically encompasses the common law offense of assault, that is, there need not be any physical contact in order to have an assault. See La-Fave & Scott, *Criminal Law* 602 (1972 Ed.). The gist of the offense of assault, as set out in Sec. 22.01(a)(2), is that one acts with intent to cause a reasonable apprehension of imminent bodily injury (though not necessarily with intent to inflict such harm). Thus, criminal assault of the type involved here requires that a person knowingly or intentionally threatens another with imminent bodily injury. "Bodily injury" means physical pain, illness, or any impairment of physical condition. See V.T.C.A. Penal Code, Sec. 1.07(a)(7). Although the word "imminent" is not defined in the Penal Code, we accept appellant's definition taken from *Webster's 20th Century Dictionary, Unabridged*, at page 840. "It denotes that something is ready to fall on the instant."

Here, the State alleged that appellant "knowingly and intentionally threaten[ed]" the named complaining witnesses "with imminent bodily injury by threatening to sic a doberman pinscher dog on [them]."

In *Barnes v. State*, 72 S.W. 168 (Tex.Cr. App.1903), this Court was confronted with a cause where the instrumentality allegedly used to commit an aggravated assault was a horse. Though finding the evidence in-

sufficient to support an assault, as then defined, it was recognized that the use of an animate or inanimate object could constitute an assault. The law at that time, however, required this Court to hold: "But simply the use of any animate or inanimate object for the purpose of alarming another does not, under our statute, constitute an assault." As to the commission of the offense of assault, as set out in Sec. 22.-01(a)(2), *supra*, there is no longer a requirement that any form of weapon be used, as previously required. Here, pursuant to appellant's motion to quash the motion to revoke probation, the State pled the means used to commit the assaults.

▪ We hold today that an assault, pursuant to Sec. 22.01(a)(2), may be accomplished through the use of an animate object, such as a dog like Tiny.

Officer Blaylock testified that when appellant let Tiny lunge at him, he considered this to be a threatening gesture. Appellant's father also testified that: "At times I was [scared of Tiny], because the dog was scared and trying to get away and I work with dogs, *I know what they will do.*" (emphasis added) Officer Hudson also testified that he felt threatened by the actions appellant took with Tiny. "We couldn't get close to him for lunging the dog at us."

▪ We find the evidence more than sufficient to show that appellant committed an assault, as defined by Sec. 22.01(a)(2), *supra*, on one or more of the complaining witnesses named in the State's motion to revoke appellant's probation, by threatening to have Tiny attack them.

Evidence which supports a finding that the appellant assaulted one of the complainants is sufficient to sustain the order revoking probation. *McDonald v. State*, 608 S.W.2d 192 (Tex.Cr.App.1980).

▪ Assuming without deciding that appellant did raise the issue of self-defense, the credibility of the witnesses was to be judged by the court hearing the motion to revoke probation and not this Court. See *Langford v. State*, supra. When supported by the evidence, this Court will not substi-

tute its collective judgment for the decision of the trial court. *Ford v. State*, 488 S.W.2d 793 (Tex.Cr.App.1972). Even where the standard of proof is beyond a reasonable doubt, it is the rare case where self-defense may be established as a matter of law. See, for example, *Fennell v. State*, 424 S.W.2d 631 (Tex.Cr.App.1968).

Under the facts presented in this cause, we do not find the trial court abused its discretion in ordering appellant's probation revoked, and rejecting appellant's purported defense of self-defense.

The order of the trial court is affirmed.