# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00211-CR

**Daniel Eugene Pardini, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. 20654, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In September 2003, appellant Daniel Eugene Pardini pleaded guilty to credit card abuse. *See* Tex. Pen. Code Ann. § 32.31 (West Supp. 2004-05). The district court adjudged him guilty and sentenced him to two years in state jail. Imposition of sentence was suspended, however, and appellant was placed on community supervision. In March 2004, the court revoked supervision and imposed sentence after finding that appellant committed the subsequent offense of burglary. In his sole point of error, appellant contends that the evidence does not support the trial court's finding. We will affirm the revocation order.

In a proceeding to revoke community supervision, the State has the burden of proving a violation of the terms and conditions of supervision by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). The State meets this burden if the greater weight of credible evidence creates a reasonable belief that the defendant violated a condition of

supervision as alleged in the motion to revoke. *Jenkins v. State*, 740 S.W.2d 435, 437 (Tex. Crim. App. 1987).

James Scott testified that he hired appellant in October 2003 to do some remodeling work on a rent house Scott owns near Rockdale. Appellant did not have a key to the house. Scott, who lived nearby, would unlock the house in the morning so that appellant could enter, then lock the house in the evening to secure the tools and equipment. On one occasion, appellant arrived while the house was still locked; he entered through the front window. Appellant's last workday was about one week before the burglary.

Around 7:00 a.m. on Saturday, October 11, Scott noticed tracks in the dew-covered grass in front of the rent house. A vehicle appeared to have driven up to the house and stopped by the front porch, just below the front window. Investigating, Scott noticed that the front door knob was locked, but the deadbolt was not. Scott went inside and discovered that an air compressor, nail gun, and cordless drill were missing.[1] Scott also noticed that the front window lock was broken.

Scott called the sheriff and Deputy Ronald White arrived at the house at about 8:00 a.m. White testified that he noticed the tracks in the dew, and said that his boots were soaked after walking in the grass. Inside the house, White discovered a footprint on a box sitting below the front window inside the house. White, who testified that he did not notice any damage to the window, concluded that the burglar had entered the house through the window and left with the stolen goods through the front door. White also described the gypsum dust from the wallboard that covered

---

[1] Scott testified that his father recovered the nail gun four or five days later after meeting a friend, whose identity his father would not disclose, at a local bar.

everything inside the house. White took photographs of the footprint on the box and of the tire tracks in the grass.

Scott told White that appellant had been working at the house and had once entered through the window. Believing that this made appellant a suspect, White drove to the house in Rockdale where appellant lived with his mother. He arrived at about 8:45 a.m. Appellant's mother admitted the officer, who spoke to appellant in his bedroom. Appellant agreed to come to the sheriff's office to give White a statement.

When appellant arrived at the sheriff's office that morning, White noticed that the cuffs of his jeans were wet. Appellant told White that he had last worked at Scott's house the previous Monday, when he taped and floated the walls. Because he had been in and out of the house all that day but did not have a key, he had locked the front door and entered and exited through the window. Under the circumstances, appellant said he was not surprised that his foot print and tire tracks would be found at the house. As for his activities the previous night, appellant said that he watched television with his mother, then walked to Waymond Page's house. Appellant said that he watched a movie with Page, then returned home and went to bed.

Deputy White spoke to Page later that day. Page told the officer, and later testified at the revocation hearing, that appellant drove to his house in his mother's car on the night of October 10. Page said that appellant tried to sell him an air compressor that was in the back seat of the car. Page testified that he did not buy the compressor but agreed to help appellant sell it. Page and appellant attempted to sell the compressor to Donald Allen later that night. Allen confirmed this in his own testimony. He said that Page, who was in a blue Oldsmobile driven by a man he could not see, approached him on the night of October 10 and offered to sell him an air compressor.

3

Appellant's mother's car was a blue Oldsmobile. White searched the car on October 12 with her consent. A good deal of wallboard dust was on the back seat, which had a large indentation as if a heavy object had been lying there. White took photographs of the interior of the car and of its tires that were admitted in evidence.

Bill Harris, a local tire dealer, testified that the tread pattern of the tires on appellant's mother's car matched the pattern of the tread marks found at the scene of the burglary. Harris also testified, however, that this was a very common pattern, most often found on light truck tires.

Appellant's testimony at the hearing was consistent with the statement he gave White at the sheriff's office. He explained the dust in his mother's car by saying that he drove the car to jobs and that he kept a shop vacuum and drywall tools in the back seat. Appellant denied committing the burglary.

As the trier of facts at a revocation hearing, the trial court is the sole judge of the credibility of the witnesses and the weight of the evidence. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). Appellate review of a revocation order is limited to determining whether the trial court abused its discretion. *Cardona v. State*, 665 S.W.2d 492, 495 (Tex. Crim. App. 1984). Because the decision to revoke is committed to the discretion of the trial court, we review the evidence presented at the hearing in the light most favorable to the trial court's findings. *Id.*; *see Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (holding that application of factual sufficiency review to probation revocations would conflict with trial court's discretion).

Appellant had recently worked in the house, he knew how to enter it without a key, and he admitted that the shoe print found on the box under the window was his. The tire tracks

4

found in the grass matched those on the car appellant regularly drove, and the back seat of this car was covered in wallboard dust like that in the rent house and had an indentation as if a heavy air compressor had been lying there. When appellant was interviewed on the morning after the burglary, his jeans were wet as they would have been if he had walked through the dewy grass. Waymond Page testified that appellant tried to sell him an air compressor on the night of the burglary and that they both tried to sell the compressor to Donald Allen. Allen corroborated Page's testimony, although he could not identify appellant as the man with Page. Viewing this evidence in the light most favorable to the trial court's finding, we conclude that the preponderance of the credible evidence creates a reasonable belief that appellant entered Scott's rent house without his permission and committed theft as alleged in the motion to revoke. Even if we view the evidence in a neutral light, as appellant asks us to do, we believe that the court did not abuse its discretion by finding that the alleged violation was proved by a preponderance of the evidence.

We overrule the point of error and affirm the order revoking community supervision.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: April 21, 2005

Do Not Publish

5