*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-07-00846-CR

David Ringo **AVALOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CR-2611
Honorable Mary Roman, Judge Presiding

Opinion by:    Alma L. López, Chief Justice

Sitting:    Alma L. López, Chief Justice
Catherine Stone, Justice
Sandee Bryan Marion, Justice

Delivered and Filed:   September 10, 2008

AFFIRMED

David Ringo Avalos challenges the revocation of his community supervision for the offense

of theft.  Avalos contends the trial court abused its discretion in revoking his community supervision

because the evidence was legally insufficient to prove that Avalos committed theft in either Bexar

or Guadalupe County.  We affirm the trial court's judgment revoking Avalos's community

supervision.

**BACKGROUND**

In April of 2004, Avalos was indicted on two counts of theft of service in an amount more than $1,500 but less than $20,000. Pursuant to a plea bargain agreement, Avalos pled *nolo contendere* and was sentenced to two years' community supervision commencing February 9, 2006. Avalos was also ordered to pay restitution of $5,874. On September 25, 2007, the State filed a motion to revoke Avalos's community supervision, alleging that Avalos violated condition number one of his community supervision by committing an offense against the laws of the State of Texas, i.e. theft in Guadalupe County on or about February 27, 2006 and theft in Bexar County on or about October 26, 2006. At a hearing on the motion to revoke, Avalos pled "not true" to both allegations. After hearing testimony from several witnesses, the trial court found both allegations "true," revoked Avalos's community supervision, and sentenced Avalos to two years' confinement in the Texas Department of Criminal Justice – State Jail Division, with a $250 fine. Avalos appeals.

**APPLICABLE LAW**

In a hearing on a motion to revoke community supervision, the State bears the burden to prove its allegations by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The State meets its burden when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006). "It is the trial court's duty to judge the credibility of the witnesses and to determine whether the allegations in the motion to revoke are true or not." *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). An appellate court reviews the trial court's order revoking community supervision under an abuse of discretion standard. *Id.* We indulge all inferences in a light favoring the trial court's ruling, *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. [Panel Op.] 1979), and sustain the

order of revocation if the evidence substantiates a single violation. *Jones v. State*, 571 S.W.2d 191, 193-94 (Tex. Crim. App. [Panel Op.] 1978).

## ANALYSIS

During the hearing on the motion to revoke Avalos's community supervision, the State introduced the testimony of Paul Castillo regarding the alleged February theft and Detective Edward Oviedo and Laura Miskell regarding the alleged October theft. Because we conclude the State introduced sufficient evidence to create a reasonable belief that Avalos violated a condition of his community supervision vís-a-vís his dealings with Castillo, we will consider only the testimony regarding the alleged February offense.

Castillo had previously contracted Avalos to do work for Castillo which Avalos completed and for which he was paid. Castillo decided to further contract Avalos to install a sprinkler system for $4,000, i.e. ten sprinkler zones at $400 each. Castillo testified that he initially gave Avalos $1,000 on February 7, 2006 as a down payment for the installation of the sprinkler system. Castillo then gave Avalos another $3,000 on February 27, 2006 because Avalos called Castillo at work and said he needed $3,000 "to pick up some parts that were . . . discounted [only] that day." Castillo gave Avalos an additional $3,000 for a total of $4,000 which corresponded to the quoted price of the sprinkler system. Castillo's cancelled check for $3,000 was introduced into evidence.

Castillo testified that on the same day that he gave Avalos the $3,000 check, Castillo's wife discovered Avalos was not authorized to operate in their city. Castillo tried to stop payment on the check, but it had already been cashed on February 27, 2006. Castillo phoned Avalos several times to find out when Avalos was going to start work on the sprinkler system; however, Avalos always had an excuse as to why he could not begin work such as: it was going to rain; he did not have a crew available; and he had another job in another town. When Castillo finally asked Avalos to

return the money, Avalos "became very irrational, screamed at [Castillo] on the phone, said he was going to fuck [Castillo] up, and hung up on [Castillo]." Castillo reported Avalos's threat to the local police who contacted the Texas Rangers because Avalos was on community supervision. The Texas Rangers took a report from Castillo's wife and filed a criminal complaint for theft with Bexar County. Castillo did not see Avalos after he gave Avalos the $3,000 check until the hearing. Avalos never began work on the sprinkler system and never produced the sprinkler parts.

Avalos testified on his own behalf. Avalos claimed that Castillo had lied about the work to which the $3,000 was supposed to be applied. Avalos claimed "it was for other work I had done. And [Castillo] had already used that money up on other work. I have that in writing, but my lawyer didn't bring it today." Avalos admitted that he did not install a sprinkler system "because the money had been used up in other projects I had done for [Castillo]." Avalos also testified that he had not threatened Castillo even though Avalos admitted "I'm sure that I got a little angry. Yeah. I mean, I think that when it comes to a money type situation that, you know, but I didn't—when you say raise my voice, it wasn't much more than this." When asked if Avalos had ever threatened anyone, Avalos responded, "Yeah. I'm not innocent of . . . threatening people. Yeah."

Because it is the trial court's duty to determine the credibility of the witnesses and decide whether the defendant violated a condition of his community supervision, we must view the evidence in the light most favorable to the trial court's decision. *Garrett*, 619 S.W.2d at 174. Avalos admitted he received $4,000 from Castillo and did not install a sprinkler system for Castillo. Avalos claimed the $4,000 paid to him by Castillo was for other work he had completed for Castillo even though Castillo's cancelled check for $3,000 listed "sprinkler/landscape" on the memo line. Avalos also denied threatening Castillo even though he admitted that he got angry with Castillo and had threatened other people. The trial judge could have reasonably chosen to believe Castillo's account

of the events and not to believe Avalos's version. *See Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. [Panel Op.] 1980). We conclude the State presented sufficient evidence to create a reasonable belief that Avalos violated condition number one of his community supervision by committing the offense of theft against Paul Castillo. *See Rickels*, 202 S.W.3d at 764. The evidence showed Avalos appropriated at least $3,000 from Castillo with the intent to deprive Castillo of the money and the associated services, therefore, the trial court did not abuse its discretion in revoking Avalos's community supervision. Avalos's sole issue is overruled.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment revoking Avalos's community supervision.

Alma L. López, Chief Justice

DO NOT PUBLISH