

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00482-CR

JESUS SOTO                                                                                          APPELLANT

V.

THE STATE OF TEXAS                                                                                        STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Pursuant to a plea bargain, appellant Jesus Soto pleaded guilty to driving while intoxicated-felony repetition. The trial court convicted him, sentenced him to ten years' confinement, but suspended imposition of his sentence and placed him on community supervision for ten years. The State subsequently filed a petition to revoke Soto's suspended sentence on two grounds. The first ground,

---

[1]*See* Tex. R. App. P. 47.4.

and the only one at issue in this case, alleged that Soto had violated his community supervision by, on or about June 14, 2012, intentionally or knowingly, without the effective consent of Reshee Soto, the owner thereof, entering a habitation with intent to commit assault. The second ground alleged that on or about that same date, Soto consumed an alcoholic beverage in violation of his community supervision conditions. Soto pleaded not true to both grounds. After a hearing, the trial court revoked Soto's community supervision on the first ground in the State's motion and did not rule on the second ground. The trial court sentenced Soto to ten years' confinement, and Soto brought this appeal, alleging in one issue that the trial court abused its discretion by revoking his community supervision.

We review an order revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.

*Cardona*, 665 S.W.2d at 493–94.  Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order.  *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980).

A person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation with intent to commit an assault. Tex. Penal Code Ann. § 30.02(a)(1) (West 2011).  The penal code defines the term "owner" as a person "who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."  *Id.* § 1.07(a)(35) (West Supp. 2013).

In this case, Soto argues that the State failed to prove by a preponderance of the evidence the ownership element of burglary; that is, Soto argues that he lived at the house and did not need Reshee's effective consent to enter.  At the revocation hearing, Reshee testified that she and Soto had been married for seventeen years but that they separated in June 2011.  She moved from their marital residence in Springtown to Fort Worth and rented a house at 3220 Olive Place.  She opened her own checking account at that time, and she paid rent from that account.  She forwarded her mail to the Olive Place address, and Soto's mail was forwarded there as well.  She maintained contact with Soto and allowed him to list her address as his address on his community supervision

3

documents in order to help him fulfill his community supervision requirements.[2] Soto also had clothes at the house and stayed there a total of approximately one week during the year that Reshee lived there prior to the burglary in June 2012. At one point, his and Reshee's daughter gave him a key, but Reshee took it back. Reshee changed the locks at some point between March and June 2012. Soto did not have a key to the Olive Place house at the time of the June 2012 burglary.

Reshee explained that on June 14, 2012, Soto knocked on her door, and she told him that he was not welcome and needed to leave. He continued to bang on the door and said he "was going to get in one way or the other." He picked up a cross that was on the front porch and threw it through the front window. Soto crawled through the window, chased down Reshee, and attacked her. He put his knee on Reshee's throat and put his arms around her neck. She could tell that he had been drinking alcoholic beverages. A man Reshee was dating at the time was at her house, and he yelled for Soto to get off of Reshee. Soto chased the man outside, and police—who had been called by someone else—arrested Soto.

---

[2]Soto's community supervision officer Kanika Lee testified that she conducted a home visit with Soto at the Olive Place house on April 2, 2012. The Olive Place address was also the address Lee had on file for Soto.

Soto testified that Reshee moved to Fort Worth after she caught him in an affair but that he moved in with her at the Olive Place house two weeks later. According to Soto, he gave Reshee money to pay the rent, and she gave him a key to the house. He said that on the day of the alleged burglary, he saw a strange truck at the house and, when he tried to open the door with his key, the deadlock was locked, preventing him from opening the door. When no one answered his knock, he broke the window.

Viewed in the light most favorable to the judgment, the evidence shows that Soto did not live at, and had never lived at, the Olive Place house. *See Cardona*, 665 S.W.2d at 493; *Garrett*, 619 S.W.2d at 174. After moving out of the marital residence to get away from Soto, Reshee rented the Olive Place house and paid the rent out of her own bank account. Soto did not have a key to the house at the time of the burglary and stayed there a total of one week in the year prior to the burglary. Although Soto presented contrary testimony, the trial court was the sole judge of the credibility of the witnesses. *See Cardona*, 665 S.W.2d at 493; *Garrett*, 619 S.W.2d at 174. And the sole fact that Soto and Reshee were married did not authorize him to break a window to the house rented and occupied solely by Reshee. *See Stanley v. State*, 631 S.W.2d 751, 753 (Tex. Crim. App. [Panel Op.] 1982) (so stating). We conclude that the preponderance of the evidence shows that Soto violated the condition of his community supervision prohibiting him from committing an offense by intentionally or knowingly, without Reshee's effective consent, entering Reshee's

5

habitation with intent to commit assault.  *See* Tex. Penal Code Ann. §

30.02(a)(1).   Thus, the trial court did not abuse its discretion by revoking Soto's

community supervision.  We overrule Soto's sole issue and affirm the trial court's

judgment.


                                            SUE WALKER
                                            JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 9, 2014