**Affirmed and Opinion Filed May 8, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-00900-CR

No. 05-13-00901-CR

**JAMES RILEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1140796-S**
**Trial Court Cause No. F-1140798-S**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

Appellant James Riley appeals from his adjudication of guilt for the offenses of aggravated assault with a deadly weapon and deadly conduct and his accompanying sentences of fifteen years and five years' imprisonment, respectively. In two issues, appellant contends the trial court abused its discretion when it: (1) allowed the State to use hearsay evidence in violation of *Crawford* and (2) adjudicated his guilt based upon legally insufficient evidence. We affirm.

**Background**

Appellant pled guilty to indictments for aggravated assault with a deadly weapon and deadly conduct. As a result, the trial court entered its orders of deferred adjudication, placing appellant on deferred probation for a period of ten years in each case. On May 17, 2013, the

State filed its motion to revoke probation or proceed with an adjudication of guilt for both cases.[1] The State alleged appellant violated the terms of his community supervision by failing to "participate in a drug/alcohol continuum of care treatment plan following release from the Substance Abuse Felony Punishment Program, adhering to all rules and regulations of said treatment plan until discharged by the staff of the continuum of care program." At the June 13, 2013 hearing on the motion, appellant pled "not true" to the allegation.

The State called Leslie Birdsall, a Dallas County probation officer, to testify. She testified she maintains files on people that are on probation, including appellant's file. Birdsall further stated appellant was alleged to have been "unsuccessfully discharged from SAFPF aftercare through the Salvation Army." The State then offered as "Exhibit 2" a discharge summary from the Salvation Army Substance Abuse Program that was contained in appellant's probation file. Appellant's counsel indicated he had "no objection" to the admission of Exhibit 2, and the trial court admitted it.

Birdsall then testified to the contents of Exhibit 2, reading as follows:

[O]n May 6th, [appellant] had a random drug test at the facility, at the Salvation Army. The drug test came back positive for cocaine. And after the counselors told him that he would be placed on therapeutic shut down, . . . it says here, he began using profanity and packed his belongings and left the facility.

She explained appellant left the treatment facility without permission and was discharged from SAFPF for leaving. Birdsall agreed the aftercare at the Salvation Army was part of appellant's conditions of probation and that, by leaving the aftercare program of SAFPF, he violated his probation. Appellant's counsel did not object to Birdsall's testimony regarding the contents of Exhibit 2 or her testimony generally regarding the alleged violation of appellant's probation.

---

[1] The record before us shows this motion was the fourth motion to revoke filed by the State against appellant in both cases. The prior motions resulted in the trial court making modifications to the conditions of appellant's community supervision, including the addition of a requirement to participate in the Substance Abuse Punishment Facility Program (SAFPF) and a drug/alcohol continuum of care treatment plan following his release from SAFPF.

On cross-examination, Birdsall testified appellant violated the rules and regulations of his treatment by leaving and by testing positive for cocaine. She agreed appellant had participated in the Salvation Army program for approximately two months prior to his discharge. Birdsall further acknowledged appellant had a negative urinalysis the morning of the alleged incident and that she thought the urinalysis taken at the Salvation Army later that day was an "instant" test, not sent for further analysis.

Appellant testified in his defense at the hearing. He testified that on the day in question, he obtained a pass from his counselor to see his probation officer and met him at approximately 10:00 a.m. While meeting with his probation officer, appellant was given a urinalysis, which was negative. After meeting his probation officer, he met his girlfriend at the train station and returned to the Salvation Army. Appellant explained he was required to return to the Salvation Army by 11:15 or 11:30 and that he signed in upon his return. He stated that, after returning, he did his prayers, went to groups, had lunch, and then worked with a couple of other men buffing the floor for two or three hours.

Appellant testified that, while buffing the floors, he felt like he pulled a muscle in his stomach and was in pain. He asked for a medical pass to go across the street to Parkland Hospital to obtain a refill on his prescription Etodolac, a painkiller he had been prescribed. Appellant was told he would have to wait for permission from a senior counselor and that he waited four or five hours for the senior counselor to arrive. When the senior counselor arrived, appellant asked for a pass because he was still in pain, but was called into the case aid office with two other individuals. There, the counselor indicated he wanted a breathalyzer and urinalysis from appellant. Appellant testified his breathalyzer sample was "clean" and then all three men submitted their urine samples at the same time in unmarked cups. Appellant stated that, when the results came back, the counselor said, "Well, that's why your stomach hurting. You been

doing cocaine." Appellant indicated he requested another test and pointed out his earlier negative urinalysis. He testified he was denied another urinalysis, because it was not the policy. Appellant further stated the counselor told him he needed to get his stuff and leave or he would have security call the police if he did not leave. Appellant testified he then left. He denied that he had used profanity.

Appellant said he then called his probation officer the next morning and told him what transpired at the Salvation Army. Appellant stated his probation officer said he needed to wait for the report from the Salvation Army and he only wanted appellant to stay clean and sober and take two NA/AA classes per week, which he did. Appellant testified he was unable to get in touch with his probation officer again for several days and, when he did, the probation officer told him he did not need to do anything but report to him as scheduled.

On cross-examination, appellant acknowledged that the trial court had previously instructed him that, if he got into any trouble, he was supposed to report to the judge. He admitted he did not report to the judge.

The trial court granted the State's motion to revoke probation or proceed with an adjudication of guilt in both cases and adjudicated appellant guilty. In the aggravated assault with a deadly weapon case, the trial court assessed appellant's punishment at fifteen years' imprisonment. The trial court assessed a term of five years' imprisonment for the deadly conduct case.[2]

**Analysis**

*Right to Confrontation*

In his first issue, appellant contends the trial court abused its discretion when it allowed the State to use hearsay evidence in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). In

_____

[2] We note the record reflects appellant was also previously convicted of unlawful carrying of a weapon in 2010.

–4–

*Crawford*, the Supreme Court held that out-of-court testimonial statements by a witness, who fails to testify at trial, are barred by the Sixth Amendment's confrontation clause unless the witness in unavailable to testify and the accused had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. *Id.* at 59-65. Appellant argues the "documents submitted by the Salvation Army worker and read out loud via the Court's Probation Officer are, in fact, testimonial" and violated appellant's rights under *Crawford*.

The confrontation clause by its own terms applies only to "criminal prosecutions." *See* U.S. CONST. amend VI. Because probation revocation is not a stage of a "criminal prosecution," the Sixth Amendment does not apply. *Wisser v. State*, 350 S.W.3d 161, 164 (Tex. App.−San Antonio 2001, no pet.); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.−Houston [14th Dist.] 2007, no pet.); *Smart v. State*, 153 S.W.3d 118, 121 (Tex. App.−Beaumont 2005, pet. ref'd). The same is true of deferred adjudication probation.

The Eastland Court of Appeals has applied the general rule that revocation proceedings are not a phase of "criminal prosecution" for the purpose of the Sixth Amendment in the deferred adjudication context. *Mauro v. State*, 235 S.W.3d 374, 376 (Tex. App.−Eastland 2007, pet. ref'd). Deferred adjudication probation differs from regular probation in that it permits a defendant who pleads guilty to an offense and who successfully completes probation to avoid "conviction." However, the issue of appellant's guilt for the offense is determined in the initial plea proceedings, and the only issue to be determined in the revocation proceedings is whether to proceed with an adjudication of guilt. See TEX. CODE CRIM. PROC. ANN. art. 42.12 §5(b). We conclude because appellant's guilt was already determined in the prior plea proceedings, the revocation proceedings were not a phase of "criminal prosecution" for purposes of the Sixth Amendment. *See Gutierrez v. State,* No. 05-11-01380-CR, 2013 WL 3533549, at *1-2 (Tex.

App.−Dallas July 12, 2013, pet. ref'd) (not designated for publication). Therefore, the trial court did not err in admitting the documents submitted by the Salvation Army worker and read out loud via the Court's Probation Officer under *Crawford*. *See id.* at \*2.

Further, the record before us shows appellant failed to lodge any objection to either Exhibit 2 or Birdsall's testimony regarding Exhibit 2 and her testimony generally regarding the alleged violation of appellant's probation. Accordingly, because appellant failed to object based on the Sixth Amendment, the confrontation clause, or article I, section 10, we conclude he has waived his right to review. *See Deener v. State*, 214 S.W.3d 522, 527-28 (Tex. App.−Dallas 2006 pet. ref'd). We overrule his first issue.

### *Sufficiency of the Evidence*

In his second issue, appellant argues the trial court abused its discretion when it adjudicated his guilt based upon legally insufficient evidence. Appellate review of an order revoking community supervision is limited to determining whether the trial court abused its discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). An order revoking probation must be supported by a preponderance of the evidence, meaning the greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of probation. *Id.* at 763-64. We must view the evidence in the light most favorable to the verdict, and it is the trial court's duty to judge the credibility of the witnesses and to determine whether the allegations in the motion to revoke are true or not. *See Garret v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). A finding of a single violation of community supervision is sufficient to support revocation. *See Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980).

The trial court, as the trier of fact and the arbiter of the credibility of the witnesses, was free to believe Birdsall's testimony that appellant violated the conditions of his community

supervision by failing to "participate in a drug/alcohol continuum of care treatment plan following release from the Substance Abuse Felony Punishment Program, adhering to all rules and regulations of said treatment plan until discharged by the staff of the continuum of care program." *See Garrett*, 619 S.W.2d at 174. The trial court was also free to reject appellant's claim that he was told to leave. *See id.* Viewing the evidence in the light most favorable to the verdict, our review of the record demonstrates Birdsall's testimony, along with Exhibit 2, constitutes credible evidence from which the trial court concluded by a preponderance of the evidence that appellant violated a term of his community supervision. *See Rickels*, 202 S.W.3d at 763; *Garret*, 619 S.W.2d at 174. A finding of a single violation of community supervision is sufficient to support an adjudication of guilt. *See Sanchez*, 603 S.W.2d at 871. Therefore, we conclude the trial court did not abuse its discretion in adjudicating appellant guilty in both cases. *See Rickels*, 202 S.W.3d at 763-64. We overrule appellant's second issue.

Having overruled appellant's two issues, we affirm the judgment of the trial court.

Do Not Publish
TEX. R. APP. P. 47
130900F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–7–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAMES RILEY, Appellant

No. 05-13-00900-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1140796-S.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered May 8, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES RILEY, Appellant

No. 05-13-00901-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1140798-S.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered May 8, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE