**Opinion issued March 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00324-CR & 01-15-00325-CR

————————————

## ASTIN CHAVERS CLARK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 248th District Court
Harris County, Texas
Trial Court Case Nos. 1296861 & 1297213

## MEMORANDUM OPINION

Appellant Astin Chavers Clark appeals the trial court revoking his community supervision and adjudicating him guilty on two counts of burglary of a habitation. We affirm.

# BACKGROUND

On February 28, 2011, appellant was charged with two counts of felony breaking into and hiding in complainant's home with the intent to commit the felony of sexually assault. In November 2011, and the trial court signed an order of six years' deferred adjudication, with multiple conditions, including registration as a sex offender. The State alleged several times that appellant violated conditions of his community supervision, and moved to revoke. Each time the court modified the conditions and continued the deferred adjudication.

## A.    The Adjudication Proceedings

In March, 2015, a hearing was held on the State's latest amended motions to adjudicate guilt.

### 1.    Appellant's admissions that he violated certain conditions of confinement

At the beginning of the hearing, appellant pleaded "true" to several of the alleged violations, and "not true" to others. Specifically, he pleaded true to the allegations:

1)    In violation of the supervision conditions that he avoid persons or places of disreputable or harmful character, on October 3rd, 2014, the defendant admitted to polygraph examiner Ronald Russell:

> - to meeting a woman on the street that he met about four months ago, and he inviting her to his residence where she smoked cocaine,

-to meeting a woman on the street that he met about four months ago and inviting her to his residence where she snorted what he thinks could have been cocaine,

- that he met a female on the street who used marijuana in front of him on or about October 1st, 2014, and

- that he picked up a woman that smoked marijuana in front of him that he met on Scott Street.

2) being $350.00 in arrears on supervision fees

3) being $457 in arrears on court costs

4) failing to pay laboratory processing fees of $295

5) failing to pay offender identification court costs of $2.50

6) failing to pay $25 Crime Stoppers Fee

7) failing to pay $25 Children's Assessment Center fee

8) failing to pay $60 Sex Assault Program Fund fee

9) failing to pay $15 for DNA testing

10) failing to comply with the requirement that he participle in Sex Offender Treatment until successful discharge or release by the Court and instead being suspended from the Sex Offender Treatment Program

11) In violation of the supervision condition that he have no contact with minors under the age of 17, on October 3, 2014, he admitted to polygraph examiner Ronald Russell that he

-held the hand of a 9-year-old boy during Bible study in August 2014, and

-shook hands with minor members of his church congregation in August 2014.

12) In violation of the supervision condition that he not view, receive, download, transmit, or possess pornographic materials on any computer equipment, on October 3, 2014, he admitted to polygraph examiner Ronald Russell that he

-received nude photos from a woman he met on the Quest Chat line, and

-viewed the nude image of the penis of a man on a cell phone.

3

13) In violation of the supervision condition that he not access the Internet, on October 3, 2014, he admitted to polygraph examiner Ronald Russell that he input personal information online while registering for barber college without the permission of the Court.

Appellant pleaded "not true" to the allegations that he violated supervision provisions by admitting to polygraph examiner Ronald Russel that he (1) in August 2014, exposed his penis to a girl that he was later informed was a minor, (2) watched a 16-year-old girl on a swing at the park and talked to her, (3) accessed the Internet on his smart phone to look at maps, and (4) accessed the Internet on his smart phone to listen to music.

## 2. Testimony by Ronald Russell, polygraph examiner

Russell testified to performing polygraph tests for over 11 years, covering about 10,000 cases. Through his nine-year contract with Harris County, he primarily works with sex-offender probationers that are sent to him to determine compliance with their conditions. He testified to giving appellant a pre-interview questionnaire to complete. He then recorded a little more than an hour of a pre-polygraph-test interview of appellant, and recorded the 30-minute polygraph test.

The State did not seek to introduce the results or recording of the polygraph examination into evidence, but offered only the questionnaire answers and the recording of the pre-polygraph interview, as well as a handwritten statement by appellant made after the polygraph test. The trial court admitted each of these into evidence at the hearing.

Russell testified his job was to interview appellant, perform the polygraph examination, and then report the results to appellant's probation officer and to his sex-offender treatment provider, Raymond Johnson.

Appellant's pre-interview questionnaire was dated October 3, 2014, and asked appellant to answer "yes" or "no" about behaviors since November 29, 2011 that would indicate non-compliance with probation supervision conditions.

Of the 65 yes or no questions, he answered "yes" to the following:

1)   Have you been arrested for anything new?
2)   Have you violated your travel restrictions?
3)   Have you been around a person using illegal drugs?
4)   Have you spent time with disreputable characters?
5)   Have you violated any curfews?
6)   Have you committed any undetected crimes?
7)   Have you violated any other general conditions?
8)   Have you lied to your supervision officer?
9)   Have you lied to get out of a major problem?
10)  Have you lied to cover up something that you did?
11)  Have you been alone, unsupervised, with a minor?
12)  Have you had supervised contact with a  minor?
13)  Have you groomed a minor?
14)  Have you exposed your genitals? (public, stranger, minor)
15)  Have you engaged in touching someone without consent?
16)  Have you peeped on anyone or engaged in voyeurism?
17)  Have you followed or stalked a potential victim?
18)  Engaged in obscene calls, 900 numbers or telephone sex?
19)  Have you masturbated in a public place?

20) Have you possessed or viewed any pornographic material?

21) Have you used a computer including smartphone?

22) Have you committed a sex crime?

23) Have you fantasized about sex with minors?

He did not answer "yes" or "no" as to whether he had "violated [his] child safety zone restriction" or whether he "accessed the Internet."

The written statement entered into evidence was a document entitled "Voluntary Non-Custodial Statement." Russell testified that it was made after appellant completed his polygraph examination. The statement is signed by appellant, witnessed, and states:

> My name is Astin Clark and I am 25 years of age. . . . As part of my interview with Mr. Russell, I wish to voluntarily and freely make the following admission or admissions. Mr. Russell has not promised me anything or coerced me in any way to make these admissions and I understand that (1) I am free to leave the interview room at any time; (2) that I am not in custody; (3) that I am not required to give this statement; and (4) that this statement is given freely by me in a non-custodial setting.

> I've masturbated at the washateria by exposing myself. She was an obvious woman of legal age and I fantasized to her as I masturbated.

> On several occasions I've masturbated to many women while driving. An estimated 5 women witnessed me in the act, within the year.

> Within the year, I peeped though the window of the apartment of a [illegible] as she washed her dishes. I didn't masturbate but indeed peeped.

> Within the year, a woman I was in a sexual relationship with was asleep at my apartment, while she was asleep I began to fondle her. She later woke and we proceeded to consensual intercourse.

6

### 3. Testimony by Raymond Johnson

Johnson next testified. He stated that part of the sexual offender treatment contract is that defendants consent to polygraph examinations to determine if the person is compliant with probationary rules and treatment rules, and whether there are additional behaviors not in line with the treatment. Johnson believed that appellant had made some progress in his treatment, but he suspended him from treatment and sent him back to his probation officer after reviewing the results of appellant's October 3, 2014 polygraph test. Although Johnson did not watch the tape of the polygraph examination or read appellant's pre-polygraph questionnaire, he read several admissions of appellant's from the exam, including appellant's (1) masturbating in public, (2) contact with minors, (3) viewing pornography, and (4) peeping in people's windows. Johnson considered these behaviors to be potential high risk to the community.

Johnson testified that some of appellant's behaviors may stem from his upbringing during which he suffered some abuse.

### 4. Adjudication of guilt and punishment

After the tape of appellant's pre-polygraph interview was played for the court, it found all of the State's pleaded violations to be "true" and the punishment phase was held. The State called a University of Houston student who testified that, while she was living in an all girls' dormitory in 2011 at the age of 16, she

awoke in the middle of the night to discover appellant touching her breasts. He was lying on the ground, and—after she started screaming—stated "Oh I thought this was my girlfriend's room" and left. The complainant testified to being left scared and paranoid after the incident, as she had just come alone from Venezuela five months previously to participate in a study-abroad program, and had no family here in the United States.

Appellant's aunt, Freda Clark, testified on appellant's behalf. She explained that she and appellant's uncle raised appellant for much of his childhood because his "mother was just not around." Appellant's mother had drug problems, and they do not know who appellant's father is. When appellant was 4 or 5 years' old, appellant's mother brought appellant to his aunt and uncle complaining he was sick. When they took appellant to the doctor, he had genital herpes, and it was evident that he had been sexually assaulted. Child Protective Services took custody of appellant at that point, and he was later returned to the Clarks. Clark testified to being shocked when she watched the video of appellant's pre-polygraph interview and upset that "he's been going through something and we didn't know or couldn't help him."

The court, while acknowledging that appellant had a rough childhood, opined that—based on the evidence and appellant's taped admissions—he is "a

8

dangerous threat to the community." The court sentenced appellant to 25 years' confinement, and appellant brought this appeal.

## ISSUE ON APPEAL

In a single point of error, appellant argues:

The trial court committed reversible error by allowing the prosecutor, over a timely specific objection by defense counsel, to introduce evidence of the appellant's failed polygraph results and statements made during custodial interrogation obtained without *Miranda* warnings, in violation of appellant's Fifth Amendment rights against self-incrimination.

## STANDARD OF REVIEW

The decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2013); *Cantu v. State*, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.). We review an order revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence

9

in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94. We will affirm if there is sufficient proof of one violation. *Marcum v. State*, 983 S.W.2d 762, 767 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (recognizing that the State only need prove one violation of a condition of probation and that the failure of a defendant to report to his community supervision officer as instructed on one occasion is sufficient grounds for adjudication of guilt).

## APPLICABLE LAW

Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "It is well settled that the Fifth Amendment insulates probationers from compelled self-incrimination." *Dansby v. State*, 398 S.W.3d 233, 240 (Tex. Crim. App. 2013). "Supreme Court decisions have 'made clear' that a state may 'not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege.'" *Id.* (quoting *Minnesota v. Murphy*, 465 U.S. 420, 438, 104 S. Ct. 1136, 1148 (1984). Thus, while a probationer may be compelled "to appear and give testimony about matters relevant to his probationary status," he cannot be "required . . . to choose between

10

making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Murphy*, 465 U.S. at 436, 104 S. Ct. at 1147. "A State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminate the threat of incrimination." *Id.* at 435 n.7, 104 S. Ct. at 1147 n.7.

The "privilege against compelled self-incrimination is not ordinarily self-executing." *Chapman v. State*, 115 S.W.3d 1, 6 (Tex. Crim. App. 2003). "In all but a few specific situations, a criminal defendant must timely assert his privilege":

> The Fifth Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment.

*Id.*

If a probationer does not affirmatively invoke the privilege, the question becomes whether "'the classic penalty situation'" exception to this general rule applies, thereby relieving him of the responsibility to assert his privilege." *Id.* In the classic penalty situation, a person is threatened with punishment for relying upon his Fifth Amendment privilege. *Id.* The Supreme Court has identified the key inquiry in this penalty situation as "whether the accused was deprived of his

free choice to admit, to deny, or to refuse to answer." *Garrity v. New Jersey*, 385 U.S. 493, 496, 87 S. Ct. 616, 618 (1967).

*Miranda* warnings are not required before a polygraph examination if the purpose of the polygraph examination is to "to help evaluate the truthfulness" of the defendant's reports and compliance with supervision terms. *Ex parte Renfro*, 999 S.W.2d 557, 561 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). "When subject to a polygraph examination as an investigative tool [to evaluate compliance with supervision conditions] alone, a probationer is not placed in any worse position than he would otherwise be were there no polygraph condition." *Id.*

## ANALYSIS

During the State's direct examination of Mr. Russell, the polygraph examiner, it moved to admit into evidence (1) appellant's completed questionnaire, (2) appellant's "Voluntary Non-Custodial Statement," and (3) Russell's recorded interview. Before the court ruled, appellant's counsel requested permission to take Russell on voir dire:

> Q. Just a few things. It is your understanding it was Mr. Clark's – it was a requirement of his probation that he take these polygraph tests?
>
> A. Yes, sir.
>
> Q. And refusal to do so could be a violation of his probation?
>
> A. That's what I understand, yes, sir.
>
> Q. Which could then result in him going to prison?

12

A.    Correct.

Q.    Did you Mirandize him before the test?

A.    No, sir.  I'm not a peace officer.

Appellant's then made the following objection.

> Your Honor, just in an abundance of caution, I object to the admission of this as a violation of his *Miranda* rights, his right to self-incrimination. It's our position that given the mandatory nature of this polygraph test, it's tantamount to a custodial statement and we would ask that it not be admitted.

The trial court overruled the objection and ruled that the State's three exhibits were admitted.

## A.    Parties' arguments

Appellant argues that he "objected to the admission of the failed polygraph examination and other exhibits offered by the prosecution, as a violation of [appellant's] *Miranda* rights and rights against self-incriminating, arguing that because these tests were mandatory in nature they amounted to an involuntary custodial statement obtained without Miranda warnings."  According to appellant, "Supreme Court decisions have 'made clear' that a state may not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege."

The State responds that the Fifth Amendment was not implicated because appellant's statements were solicited solely for the purpose of investigating compliance with supervision terms (which could lead to revocation of that

supervision), but not for use in a future criminal prosecution.  Further, the State contends that any privilege against self-incrimination was waived by appellant's failure to invoke it during the pre-polygraph interview or the post-polygraph written statement.  The State also disputes that *Miranda* warnings were necessary, as appellant was not in a custodial interrogation.

Finally, the State notes that there are numerous violations to which appellant pleaded true that are unrelated to the admissions made during the pre-polygraph questionnaire and interview, or the post-polygraph written statement.  Because appellant does not address those grounds in his brief, the State argues that we must affirm.

## B.    Application of the Law

Preliminarily, we note that—despite appellant's argument that the trial court erred in admitting "the failed polygraph examination"—neither the polygraph examination, nor its results, were entered into evidence.  At issue here is the trial court's admission of the pre-polygraph questionnaire and interview and the post-polygraph written statement.  The crux of appellant's argument is that *Miranda* warnings should have been given before he was interviewed.  "Statements made by a suspect during a custodial interrogation are inadmissible unless the suspect was given a *Miranda* warning and knowingly and intelligently waived [the] privilege against self-incrimination and [the] right to counsel." *In re A.M.*, 333 S.W.3d 411,

14

416 (Tex. App.—Eastland 2011, pet. denied); *see also Ervin v. State*, 333 S.W.3d 187, 204 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (recognizing that failure to give *Miranda* warnings and the warnings set forth in TEX. CODE CRIM. PROC ANN. art. 38.22 §§ 2(a), 3(a) (West 2005) render custodial statements inadmissible). "However, requiring a probationer to submit to a polygraph examination does not subject the person to custodial interrogation." *A.M.*, 333 S.W.3d at 417; *Marcum*, 963 S.W.2d at 766 ("Although the examination was a requirement of his probation, appellant was not subjected to custodial interrogation.").

Appellant did not invoke his Fifth Amendment rights at the polygraph examiner's and, in his post-polygraph statement, he acknowledged, in writing, that that his statement was made "voluntarily and freely," and his understanding "(1) I am free to leave the interview room at any time; (2) that I am not in custody; (3) that I am not required to give this statement; and (4) that this statement is given freely by me in a non-custodial setting."

Appellant was represented by counsel at the adjudication hearing. At the beginning of the hearing, *before* the State sought to introduce any evidence from the polygraph questionnaire, interview, or written statement, appellant pleaded true to thirteen (some with additional sub-parts) violations of the terms of his community supervision. Of those, four were directly related to admissions

appellant made to the polygraph examiner. The remainder of the violations were independent of those exhibits later admitted related to his questionnaire, interview, and written statement.

Proof of a single violation of a condition of deferred adjudication is sufficient to support a trial court's order of revocation. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Appellant's plea of "true" to numerous violations, including nine that he does not challenge here on appeal as being "tainted" by his polygraph questionnaire, interview or written statement, are sufficient to support the trial court's adjudication of guilt. *See Latigue v. State*, No. 14-10-00680-CR, 2011 WL 2149418, at *2 (Tex. App.—Houston [14th Dist.] May 26, 2011, no pet.) (mem. op., not designated for publication) ("Appellant admitted he violated curfew and failed to pay court costs and fees. Those admissions alone are sufficient to support an adjudication of guilt.") (citing *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984)).

When an appellant does not challenge every ground found "true" by the trial court for adjudicating guilt, "nothing is presented for review." *Moore*, 605 S.W.2d at 924.

We overrule appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

16

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).