

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00082-CR

---------

ALPHONSE FISHER                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1460765D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Pursuant to a plea bargain, Appellant Alphonse Fisher pleaded guilty to assault causing bodily injury to a family member or person with whom he had a dating relationship with two or more prior convictions in the previous twelve months. *See* Tex. Penal Code Ann. § 25.11 (West 2011). In accordance with

---

[1]*See* Tex. R. App. P. 47.4.

the terms of a plea bargain, the trial court deferred a finding of guilt, placed Fisher on three years of deferred adjudication community supervision, and assessed a $300 fine. The conditions for community supervision required, among other things, that Fisher not commit any further offenses, that he not have any harmful or injurious contact with the victim, Melissa Fritz, and that he complete the Project Safe Neighborhood program. Following an altercation between Fisher and Frtiz on October 18, 2016, the State filed a petition to proceed to adjudication, alleging that Fisher violated those conditions of his community supervision. Fisher pleaded not true to the allegations, and after conducting an adjudication hearing, the trial court found that the first two allegations were true, adjudicated Fisher's guilt, and sentenced him to six years' in the Institutional Division of the Texas Department of Criminal Justice.

In a single issue, Fisher contends that the evidence is insufficient to support the trial court's revocation of his community supervision and adjudication of his guilt. Because the evidence adduced at the hearing on the State's petition to proceed to an adjudication is sufficient to support the trial court's finding of true to the allegation that Fisher violated a condition of his community supervision by making a harmful and injurious contact with Fritz, we will affirm the judgment of the trial court.

## II. BACKGROUND

Fisher and Fritz were involved in an altercation on October 18, 2016, at approximately 2:00 a.m., outside of the Presbyterian Night Shelter (PNS) near

2

the intersection of Cypress Street and East Lancaster Avenue in Fort Worth, Texas. At the adjudication hearing, Catherine Neal, a night security guard at the PNS, testified that while on duty on the night of October 18, 2016, at approximately 2:00 a.m., she heard a woman outside screaming for help. Neal stated that she went outside, and although she could not see anything, she could hear a woman screaming that she was choking and that she could not breathe. Neal testified that she called 9-1-1 and that when the police arrived at the scene, she observed a man walk away from the police car until the police officer ordered the man to stop.

Calvin McDaniel testified that he also called 9-1-1 on October 18, 2016, at approximately 2:00 a.m. According to McDaniel's testimony, he was walking toward the Salvation Army when he heard a man and a woman screaming and arguing and the woman yelling for help. McDaniel said that he saw the man grab the woman and start choking her.

Ramiro Jaime testified that on the night of October 18, 2016, at approximately 2:00 a.m., he was sleeping in his car nearby the PNS when he was awoken by a woman screaming for help. When Jaime looked out of the back window of his car, he saw a man and a woman "scuffling" with the man pushing the woman down. However, Jaime "didn't pay no mind" because it was "just a couple having a disagreement." Jaime testified that he then saw the man push the woman against a gate and threaten to kill her and that the woman's body began to go limp when the man began choking her. When Jaime began to

3

get out of his car, the police arrived. However, when he was cross-examined, Jaime acknowledged that he could not identify Fisher as the man in the altercation.

Officer Jentry Cotten of the Fort Worth Police Department testified that at approximately 2:15 a.m. on October 18, 2016, he was dispatched to a possible assault occurring outside of the PNS. Officer Cotten was the first officer to arrive on the scene, and upon arriving, he witnessed a man yelling at a woman while motioning with his arms. Officer Cotten testified that, after exiting his vehicle, he approached the man and woman and intervened to stop the verbal altercation. Officer Cotten then detained the man. At the hearing, Officer Cotten identified Fisher as that man he detained. Officer Cotten acknowledged, however, that he did not witness Fisher make physical contact with Fritz.

Officer James Michael Van Gorkom of the Fort Worth Police Department testified that on October 18, 2016, at approximately 2:15 a.m., he also responded to a dispatch concerning a disturbance outside of the PNS. When Officer Van Gorkom arrived at the scene, he saw that Officer Cotten had already detained Fisher, so Officer Van Gorkom went to speak to Fritz. Officer Van Gorkom described Fritz as "distraught," and he believed that Fritz appeared "unhappy, kind of confused, but just a little scared." However, Officer Van Gorkom also testified that Fritz refused to corporate and answer any of his questions. Officer Van Gorkom testified that he offered Fritz medical treatment and escorted her to

4

an ambulance because he noticed a cut on her arm, because her face appeared swollen, and because witnesses reported that she had been choked.

Valerie Okereke, a probation officer in Tarrant County, Texas, testified that she was Fisher's probation supervisor regarding his prior conviction and deferred adjudication community supervision. Okereke testified that she met twice with Fisher and went over the terms and conditions of his probation and that she believed he understood the terms and conditions.

Fisher's mother, Deborah Fisher, testified that she had known Fritz for approximately one year and that she considered Fritz to be "MHMR," melodramatic, and moody.

Finally, Fisher testified that he attempted to attend the Project Safe Neighborhood program but that he went to the wrong address due to his problems reading. Fisher testified that he notified his probation officer that he had gone to the wrong address and that she had set up another appointment for him. Regarding the October 18, 2016 altercation, Fisher testified that he never hit Fritz and that the witnesses saw him trying to calm her down and stop her from hitting him.

After hearing from the six witnesses and admitting twelve exhibits into evidence, the trial court found that Fisher had violated the conditions of his community supervision by committing a new offense—family violence—and by making contact with Fritz in a harmful or injurious manner. The trial court found that Fisher had not failed to participate in Project Safe Neighborhood.

5

Accordingly, the trial court revoked Fisher's deferred adjudication community supervision, adjudicated Fisher's guilt, and sentenced Fisher to six years' in the Institutional Division of the Texas Department of Criminal Justice.

Fisher subsequently filed an affidavit from Fritz in which she stated, in part, that Fisher "did not beat me as witnesses stated" and that "all I was concerned with was getting to the hospital because I've suffered heart issues in the past."

### III. ADJUDICATION OF GUILT

In his sole issue, Fisher contends that the evidence was insufficient to support the trial court's revocation of Fisher's deferred adjudication community supervision and adjudication of guilt.

### A. Standard of Review

A trial court's determination on a motion to adjudicate is reviewable in the same manner as the determination on a motion to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.108(b) (West Supp. 2017). We review an order revoking community supervision under an abuse-of-discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial

6

court's ruling.  *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981).  If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a revocation order.  *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980).  Consequently, when there is one sufficient ground, we do not need to address the other contentions.  *See Sanchez*, 603 S.W.2d at 871; *Long v. State*, No. 02-12-00090-CR, 2013 WL 1337975, at *2 n.7 (Tex. App.—Fort Worth Apr. 4, 2013, pet. ref'd) (mem. op., not designated for publication).

### B.  The Evidence is Sufficient to Support a Finding that Fisher Made Contact with Fritz in a Harmful or Injurious Manner

Fisher contends that the evidence presented at the hearing on the State's petition to proceed to an adjudication of guilt is insufficient to establish that he was the perpetrator of a new offense and that he had harmful or injurious contact with Fritz.  Fisher argues that because Fritz never testified or provided any statement that she had her normal breathing or blood circulation impeded, the only evidence to support such a finding would be the hearsay testimony of Neal and Jaime, which is not competent evidence to support revocation.  Fisher also

7

asserts that the evidence is insufficient because none of the witnesses to the altercation positively identified Fisher as the man involved in the altercation.

"When a defendant contests the identity element of the offense, we are mindful that identity may be proven by direct evidence, circumstantial evidence, or even inferences." *Denson v. State*, No. 2-03-00360-CR, 2005 WL 914504, at *2 (Tex. App.—Fort Worth Apr. 21, 2005, pet. ref'd) (mem. op., not designated for publication); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (holding that identity may be proven by direct or circumstantial evidence, or even by inferences). Indeed, "[t]he sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused." *Denson*, 2005 WL 914504, at *2; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[I]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.").

Although none of the witness testimony in isolation identified Fisher as harmfully and injuriously contacting Fritz during the October 18, 2016 altercation, the cumulative testimony of the witnesses established that:  (1) On October 18, 2016 at approximately 2:00 a.m. outside of the PNS, Neal heard a woman screaming for help and that she could not breathe and then Neal saw the police detain the same man involved in the altercation; (2) at the same time and in the same location, McDaniel saw a man choking a woman; (3) at the same time and

8

in the same location, Jaime saw the same man choking the same woman and identified the man as speaking to the police and the woman as being escorted to the ambulance by the police; (4) Officer Cotten identified Fisher as the man he detained for being involved in the altercation; and (5) Officer Van Gorkom identified Fritz as being the woman involved in the altercation, having a cut on her arm and swelling on her face, and being taken to the ambulance.

Fisher did testify that he did not choke Fritz during the altercation. However, the trial court, as the sole judge of the credibility of the witnesses, was within its discretion to find the testimony of Neal, McDaniel, Jaime, Officer Cotten, and Officer Van Gorkom credible while finding Fisher's contrary testimony not credible. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (recognizing that trial court is sole judge of witness credibility).

Viewing the cumulative, combined force of the evidence in the light most favorable to the trial court's ruling, and deferring to the trial court on questions of the credibility of witnesses and the weight to be given their testimony, we hold that the trial court did not abuse its discretion in finding that the State proved by a preponderance of the evidence that Fisher made contact with Fritz in a harmful or injurious manner, in violation of a condition of his community supervision.[2]

---

[2]Because we hold that the trial court did not abuse its discretion in adjudicating guilt based on Fisher's contact with Fritz that was in a harmful or injurious manner, we do not address the other ground for adjudicating guilt, namely whether Fisher committed family violence. *See* Tex. R. App. P. 47.1; *Moore*, 605 S.W.2d at 926; *Sanchez*, 603 S.W.2d at 871; *Long*, 2013 WL 1337975, at *2 n.7.

9

*See Johnson v. State*, No. 02-16-00007-CR, 2016 WL 6277373, at *3 (Tex. App.—Fort Worth Oct. 27, 2016, no pet.) (mem. op., not designated for publication) (affirming evidence was sufficient to support revocation for violating condition of no harmful or injurious contact because trial court has discretion to find conflicting testimony not credible). We overrule Fisher's single issue on appeal.

## IV. CONCLUSION

Having overruled Fisher's sole issue on appeal, we will affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, PITTMAN, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 8, 2018